**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3836
_____

US AIRWAYS, INC., in its capacity as Fiduciary and Plan
Administrator of the US Airways, Inc. Employee Benefits
Plan

v.

JAMES E. MCCUTCHEN; ROSEN LOUIK & PERRY,
P.C.,

                Appellants

_____

On Appeal from the District Court
for the Western District of Pennsylvania
(No. 2-08-cv-01593)
District Judge: Honorable David Stewart Cercone

Argued July 11, 2011

Before: SLOVITER, FUENTES, and VANASKIE, <u>Circuit
Judges</u>

(Opinion Filed: November 16, 2011)

1

Leslie A. Brueckner, Esq.
Matthew W.H. Wessler, Esq. [ARGUED]
Public Justice
1825 K Street, N.W.
Suite 200
Washington, D.C. 20006

Paul Hilko, Esq.
Neil R. Rosen, Esq.
Rosen Louik & Perry
437 Grant Street
The Frick Building, Suite 200
Pittsburgh, PA 15219-6003

Counsel for Appellants

Noah G. Lipschultz, Esq. [ARGUED]
Littler Mendelson
80 South 8th Street
1300 IDS Center
Minneapolis, MN 55402

Shannon H. Paliotta, Esq.
Littler Mendelson
625 Liberty Avenue
Dominion Tower, 26th Floor
Pittsburgh, PA 15222

Counsel for Appellee

FUENTES, <u>Circuit Judge</u>:

After Appellant James McCutchen suffered a serious automobile accident, a benefit plan administered by US Airways paid $66,866 for his medical expenses. McCutchen then recovered $110,000 from third parties, with the assistance of counsel. Then US Airways, which had not sought to enforce its subrogation rights, demanded reimbursement of the entire $66,866 it had paid without allowance for McCutchen's legal costs, which had reduced his net recovery to less than the amount it demanded. US Airways filed this suit against McCutchen for "appropriate equitable relief" pursuant to § 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(3)(B). The issue before us is whether McCutchen may assert certain equitable limitations, such as unjust enrichment, on US Airways' equitable claim. We conclude that he may. We therefore vacate the District Court's order requiring McCutchen to pay US Airways the entire $66,866 and remand the case for that Court to fashion "appropriate equitable relief."

## I.

This case stems from a tragic car accident in which a young driver lost control of her car, crossed the median of the road, and struck a car driven by 51-year-old James McCutchen. Then the truck traveling behind McCutchen also

slammed into his car. The accident killed one person and left two others with severe brain injuries. McCutchen himself was grievously injured and survived only after emergency surgery. He spent several months in physical therapy and ultimately underwent a complete hip replacement. Since the accident, McCutchen, who had a history of back surgeries and associated chronic pain, has also become unable to effectively treat that pain with medication. The accident has rendered him functionally disabled. McCutchen's Health Benefit Plan (the "Plan"), administered and self-financed by US Airways, paid medical expenses in the amount of $66,866 on his behalf.

After the accident, McCutchen, through his attorneys at Rosen Louik & Perry, P.C., filed an action against the driver of the car that caused the accident. Because she had limited insurance coverage, and because three other people were seriously injured or killed, McCutchen settled with the other driver for only $10,000. However, with his lawyers' assistance, he and his wife received another $100,000 in underinsured motorist coverage for a total third-party recovery of $110,000. After paying a 40% contingency attorneys' fee and expenses, his net recovery was less than $66,000. US Airways demanded reimbursement for the entire $66,866 that it had paid for McCutchen's medical bills. Soon after, Rosen Louik & Perry placed $41,500 in a trust account, reasoning that any lien found to be valid would have to be reduced by a proportional amount of legal costs. The record on appeal does not establish what amount was disbursed to McCutchen.

When McCutchen did not pay, US Airways, in its capacity as administrator of the ERISA benefits plan, filed

4

suit in the District Court under § 502(a)(3) of ERISA, seeking "appropriate equitable relief" in the form of a constructive trust or an equitable lien on the $41,500 held in trust and the remaining $25,366 personally from McCutchen. The Summary Plan Description describing the US Airways benefits plan covering McCutchen contained the following paragraph, entitled "Subrogation and Right of Reimbursement":

> The purpose of the Plan is to provide coverage for qualified expenses that are not covered by a third party. If the Plan pays benefits for any claim you incur as the result of negligence, willful misconduct, or other actions of a third party, the Plan will be subrogated to all your rights of recovery. You will be required to reimburse the Plan for amounts paid for claims out of *any monies recovered* from a third party, including, but not limited to, your own insurance company as the result of judgment, settlement, or otherwise. In addition you will be required to assist the administrator of the Plan in enforcing these rights and may not negotiate any agreements with a third party that would undermine the subrogation rights of the Plan.

(App. 117) (emphasis added). Thus, under the Plan Description, a beneficiary is required to reimburse the Plan for any amounts it has paid out of any monies the beneficiary recovers from a third party.

5

US Airways claims that this language permits it to recoup the $66,866 it provided for McCutchen's medical care out of the $110,000 total that he recovered regardless of his legal costs. It argues that "[t]he Plan language specifically authorized reimbursement in the amount of benefits paid, out of *any* recovery." (Appellee's Br. at 15-16).

McCutchen says that it would be unfair and inequitable to reimburse US Airways in full when he has not been fully compensated for his injuries, including pain and suffering. He argues that US Airways, which made no contribution to his attorneys' fees and expenses, would be unjustly enriched if it were now permitted to recover from him without any allowance for those costs, in essence to reap what McCutchen has sown. Indeed, if legal costs are not taken into account, US Airways will effectively be reaching into its beneficiary's pocket, putting him in a worse position than if he had not pursued a third-party recovery at all.

Citing the Plan's use of the language "any monies recovered," as well as our previous decisions, the District Court rejected McCutchen's arguments and granted summary judgment to US Airways. The Court required McCutchen to sign over the $41,500 held in trust and to pay $25,366 from his own funds. McCutchen appeals.[1]

---

[1] The District Court had jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction over McCutchen's appeal under 28 U.S.C. § 1291. "We exercise plenary review over a district court's summary judgment ruling." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 92 (3d Cir. 2011) (quoting *Melrose Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir.

**II.**

**A.**

Congress designed ERISA to protect employee pensions and benefits by providing pension insurance, enumerating certain specific characteristics of pension and benefit plans, and setting forth fiduciary duties for the managers of both pension and nonpension plans. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). The Supreme Court has repeatedly observed that "ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)) (internal quotation marks omitted). Courts have therefore been reluctant to tamper with its carefully crafted and detailed enforcement scheme. *Id.* Under this scheme, Congress gave plan beneficiaries greater rights than plan fiduciaries to enforce the terms of a benefit plan. A beneficiary has a general right of action "to enforce his rights under the terms of the plan." *Knudson*, 534 U.S. at 221 (quoting 29 U.S.C. § 1132(a)(1)(B)). By contrast, a fiduciary's right to enforce plan terms is governed by ERISA's § 502(a)(3), which limits the available relief to an injunction or "other appropriate

_____

2010)). "Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Melrose Inc.*, 613 F.3d at 387)).

7

equitable relief." 29 U.S.C. § 1132(a)(3); *Knudson*, 534 U.S. at 221; *Sereboff v. Mid Atlantic Medical Servs., Inc.*, 547 U.S. 356, 361 (2006). It is under this provision that US Airways seeks to enforce the Plan's subrogation and reimbursement provision against McCutchen.

The Supreme Court has explained that the modifier "appropriate equitable relief" is not superfluous. *Mertens*, 508 U.S. at 257-58. Rather, "Congress's choice to limit the relief available under § 502(a)(3) to 'equitable relief' requires us to recognize the difference between legal and equitable forms of restitution." *Knudson*, 534 U.S. at 218. Thus, the Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity." *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (quoting *Sereboff*, 534 U.S. at 361) (internal quotation marks omitted).

The Supreme Court has twice considered what this limitation means in the context of a fiduciary's action for reimbursement from a beneficiary under an ERISA plan. In *Great-West Life & Annuity Insurance Co. v. Knudson*, the Court first considered whether an ERISA plan administrator's claim for reimbursement was equitable in nature. *See* 534 U.S. at 210-12. To decide this question, the Court examined cases and secondary legal materials to determine whether the relief would have been equitable "[i]n the days of the divided bench." *Id.* at 212. As the Court explained, one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Id.* at 213. The Court held that this requirement was not met in *Knudson*

8

because the funds to which the plan claimed an entitlement had been placed in a "Special Needs Trust" under California law. *Id.* at 214.

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, the Court again considered an ERISA plan administrator's claim for reimbursement under the terms of the plan and § 502(a)(3). *See* 547 U.S. at 359. This time the plan administrator was able to overcome the initial hurdle of identifying specific funds within the beneficiary's possession and control. *Id.* at 362-63. Accordingly, the Court proceeded to consider whether there was a basis in equity for the administrator's reimbursement claim. *See id.* at 363-64. It held that the claim could be based on an equitable lien by agreement. *Id.* at 364-65 (citing *Barnes v. Alexander*, 232 U.S. 117 (1914)). Such a lien is not subject to the asset tracing requirements imposed on liens sought as a matter of equitable restitution. *Id.* at 365. Nor is it inherently subject to the particular equitable defenses that accompany a freestanding action for equitable subrogation, which may only be asserted after a victim has been made whole for his injuries. *Id.* at 368. Thus, the Court held that the plan administrator in *Sereboff* properly sought "equitable relief" under § 502(a)(3). *Id.* at 369. However, it expressly reserved decision on whether the term "appropriate," which modifies "equitable relief" in § 502(a)(3), would make equitable principles and defenses applicable to a claim under that section. *Id.* at 368 n.2.

This case squarely presents the question that *Sereboff* left open: whether § 502(a)(3)'s requirement that equitable relief be "appropriate" means that a fiduciary like US Airways is limited in its recovery from a beneficiary like

McCutchen by the equitable defenses and principles that were "typically available in equity."

**B.**

McCutchen argues that the phrase "appropriate equitable relief" means more than just that the relief US Airways seeks must be of an equitable type; courts must also exercise their discretion to limit that relief to what is "appropriate" under traditional equitable principles. In particular, he argues that the principle of unjust enrichment frames US Airways' claim. We agree.[2]

The Supreme Court reasoned in *Knudson* that "'equitable relief' must mean *something* less than *all* relief." *Knudson*, 534 U.S. at 209 (quoting *Mertens*, 508 U.S. at 258 n.8) (emphasis in original). Therefore, a fund administrator seeking to enforce a plan's reimbursement provision must

---

[2] Before the District Court, McCutchen also argued for application of the "make-whole" doctrine, which is an equitable doctrine, applied in many states, that provides that "the insured is entitled to be made whole before the insurer recovers on its subrogation claim." 16 Lee R. Russ in conjunction with Thomas F. Segalla, *Couch on Insurance* § 223:133 (3d ed. 2011); *see, e.g.*, *Swanson v. Hartford Ins. Co. of Midwest*, 46 P.3d 584, 589 (Mont. 2002) ("[A]n insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary.") (internal quotation omitted). McCutchen does not pursue this argument on appeal, and we do not address it.

demonstrate that its claim to relief is equitable. *Sereboff*, 547 U.S. at 363. By the same logic, "*appropriate* equitable relief" must be something less than all equitable relief. *See Mertens*, 508 U.S. at 258 ("We will not read the statute to render the modifier superfluous."). The word "appropriate" means "specially suitable," "belonging peculiarly [to]," or "attached as an accessory possession." *Webster's Third New International Dictionary* 106 (1993). Remedies that peculiarly belong to traditional categories of equitable relief would typically have been defeated by equitable principles and defenses.

Indeed, it would be strange for Congress to have intended that relief under § 502(a)(3) be limited to traditional equitable categories, but not limited by other equitable doctrines and defenses that were traditionally applicable to those categories. "[S]tatutory reference to [an equitable] remedy must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes." *Knudson*, 534 U.S. at 211 n.1 (rejecting the argument that a reimbursement claim framed as a claim for injunctive relief could proceed under § 502(a)(3) without a showing that the relief sought was typically available in equity); *see also Cigna*, 131 S. Ct. at 1880 ("Section 502(a)(3) invokes the equitable powers of the District Court."). Accordingly, in light of the foregoing reasoning, and in the absence of any indication in the language or structure of § 502(a)(3) to the contrary, we find that Congress intended to limit the equitable relief available under § 502(a)(3) through the application of equitable defenses and principles that were typically available in equity.

To determine what types of relief were typically available in equity, the Supreme Court endorsed consultation of "standard current works such as Dobbs, Palmer, Corbin, and the Restatements, which make the answer clear." *Knudson*, 534 U.S. at 217; *see Sereboff*, 547 U.S. at 368 (citing 4 George Palmer, *Law of Restitution* § 23.18 (1978)). We consult the same works to determine whether that equitable relief is "appropriate" in light of equitable principles and defenses that were typically applied. These sources all support McCutchen's position that the principle of unjust enrichment is broadly applicable to claims for equitable relief. *See* 1 Dan Dobbs, Law of Remedies § 4.3(3), at 602 (2d ed. 1993) (noting that equitable remedies such as constructive trusts and equitable liens are all "invoked for the same reason, to prevent unjust enrichment"); 1 Palmer, *Law of Restitution* § 1.1, at 4 ("In equity the principal remedy is constructive trust; but equitable lien, subrogation, and accounting are techniques frequently used to prevent unjust enrichment."). This animating principle of equity clearly applies to a trustee's claim for reimbursement from its beneficiary. "Equity courts possessed the power . . . to prevent [a] trustee's unjust enrichment." *Cigna*, 131 S. Ct. at 1880 (citing Restatement (Third) of Trusts § 95, and Comment a (Tent. Draft No. 5, Mar. 2, 2009)); *see also* 4 Palmer, *Law of Restitution* § 23.18 at 472-74 ("[T]he principle of unjust enrichment . . . . should serve to limit the effectiveness of contract provisions which in terms provide for reimbursement out of the insured's tort recovery without regard to whether or the extent to which, that recovery includes medical expense.").

12

**C.**

Against this conclusion, US Airways cites to prior decisions of this Court in which we declined to fashion a federal common law rule limiting an ERISA plan administrator's right to reimbursement under the plan's terms. *See Ryan ex rel. Capria-Ryan v. Fed. Express*, 78 F.3d 123 (3d Cir. 1996); *Bollman Hat Co. v. Root*, 112 F.3d 113 (3d Cir. 1997); *see also Bill Gray Enterprise v. Gourley*, 248 F.3d 206, 220 n.13 (3d Cir. 2001). While we recognize that the District Court may have considered itself bound by these cases, each came before the Supreme Court's decisions in *Knudson* and *Sereboff*, which clarified the meaning of "appropriate equitable relief" in § 502(a)(3), specified its central importance to fiduciaries' reimbursement suits under ERISA, and thereby undermined the reasoning and holdings of our prior decisions. Our prior opinions in *Ryan*, *Bollman Hat*, and *Gourley* did not consider whether the phrase "appropriate equitable relief" in § 502(a)(3) limits a fiduciary's right to relief. In fact, none of these cases even referenced § 502(a)(3). These cases are therefore inapposite in light of the Supreme Court's intervening decisions. *See In re Krebs*, 527 F.3d 82, 84 (3d Cir. 2008) ("A panel of this Court may reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent."); *see also Gately v. Mass.*, 2 F.3d 1221, 1226 (1st Cir. 1993) (noting that under "[t]he essential principles of *stare decisis* . . . if an issue is not argued, or though argued is ignored by the court . . . the decision does not constitute a precedent to be followed").[3]

_____

[3] Even under our prior cases, US Airways' claim to reimbursement from McCutchen's pocket is unprecedented.

13

US Airways next cites cases from other Courts of Appeals, some of which were decided after *Sereboff*, to support its position that equitable doctrines that might limit its reimbursement recovery are not applicable under § 502(a)(3). *See Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232 (11th Cir. 2010); *Admin. Comm. of Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Shank*, 500 F.3d 834 (8th Cir. 2007); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003); *Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco*, 338 F.3d 680 (7th Cir. 2003). Like our pre-*Sereboff* decisions, these cases frame the question of whether equitable principles limit the scope of an administrator's right to reimbursement as a question of whether federal common law can override the express language of benefit plans. *See, e.g.*, *O'Hara*, 604 F.3d at 1237 ("Applying federal common law to override the Plan's controlling language, which expressly provides for reimbursement regardless of whether [insured] was made whole . . . would frustrate, rather than effectuate ERISA's . . .

---

We declined to pass on the permissibility of such a claim in *Bollman Hat*, where *amicus* contended that mechanically enforcing a plan's reimbursement terms "will lead to inequitable results where a plan participant's third party recovery is less than the plan's subrogation claim plus attorney's fees." 112 F.3d at 117. Because the participant's third party settlement fully financed his attorney's fees and the reimbursement claim in that case, we declined to address "hypothetical scenarios." *Id.*; *see also Ryan*, 78 F.3d at 124-25 (noting that plan's terms limited reimbursement to a beneficiary's net recovery after legal expenses).

14

purpose to protect contractually defined benefits") (internal quotation marks omitted); *Shank*, 500 F.3d at 837 ("We are not persuaded that the Committee's full recovery according to the terms of the plan is not 'appropriate' relief within the meaning of ERISA" because "we generally adopt new rules of federal common law only if they are necessary to fill gaps left by the express provisions of ERISA and to effectuate the purposes of the statute."); *cf. Ryan*, 78 F.3d at 127 (refusing to recognize a new federal "common law right" under ERISA). Because "[a]mong the primary purposes of ERISA is to ensure the integrity of written plans," these courts refused to "apply common law theories to alter the express terms of a written plan." *Shank*, 500 F.3d at 838.

We disagree with those circuits that have held that it would be pioneering federal common law to apply equitable limitations on an equitable claim. Congress purposefully limited the relief available to fiduciaries under § 503(a)(3) to "appropriate equitable relief." *See Knudson*, 534 U.S. at 209. While our sister circuits pay homage to this language, they appear to reason that its requirement has been met so long as the suit can be properly characterized as an equitable action, without also asking whether the relief sought in the action is "appropriate" under traditional equitable principles and doctrines. But the Supreme Court has rejected a permissive reading of this language that would mean "all relief available for breach of trust at common law" because "[t]he authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute." *Mertens*, 508 U.S. at 258-59 (citation omitted). By categorically excluding the equitable limitations that § 502(a)(3)'s reference to equitable remedies necessarily contains, the

15

*Shank* and *O'Hara* courts depart from the text of ERISA. *See Knudson*, 534 U.S. at 211 n.1.

Moreover, as the Supreme Court recently demonstrated in *Cigna*, the importance of the written benefit plan is not inviolable, but is subject—based upon equitable doctrines and principles—to modification and, indeed, even equitable reformation under § 502(a)(3). 131 S. Ct. at 1879 (finding that the District Court's "reformation of the terms of the plan, in order to remedy the false or misleading information CIGNA provided . . . . [was within] a traditional power of an equity court"). While the basis for the reformation in *Cigna* was intentional misrepresentations by the employer and fiduciary, the broader and more relevant point is that when courts were sitting in equity in the days of the divided bench (or even when they apply equitable principles today) contractual language was not as sacrosanct as it is normally considered to be when applying breach of contract principles at common law. We do not suggest that US Airways' conduct was fraudulent or dishonest in the way that Cigna's was, but equitable principles can apply even where no one has committed a wrong.

Thus, we agree that one of Congress's purposes in enacting ERISA was to "ensure the integrity of written, bargained-for benefit plans.'" *O'Hara*, 604 F.3d at 1236. But, as demonstrated by the language of § 502(a)(3) and now *Cigna*, Congress expressly tempered that purpose by limiting fiduciaries to "appropriate equitable relief," thus invoking principles that it surely knew are sometimes less deferential to absolute freedom of contract. In other words, "vague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under

16

consideration." *Knudson*, 534 U.S. at 220 (quoting *Mertens*, 508 U.S. at 261) (emphasis in original).

Finally, US Airways raises a practical concern that the application of equitable principles will increase plan costs and premiums. This concern does not address the statutory language and is, in any event, unsubstantiated by the circumstances of this case. US Airways cannot plausibly claim it charged lower premiums because it anticipated a windfall.

**D.**

Applying the traditional equitable principle of unjust enrichment, we conclude that the judgment requiring McCutchen to provide full reimbursement to US Airways constitutes inappropriate and inequitable relief. Because the amount of the judgment exceeds the net amount of McCutchen's third-party recovery, it leaves him with less than full payment for his emergency medical bills, thus undermining the entire purpose of the Plan. At the same time, it amounts to a windfall for US Airways, which did not exercise its subrogation rights or contribute to the cost of obtaining the third-party recovery. Equity abhors a windfall. *See Prudential Ins. Co. of America v. S.S. American Lancer*, 870 F.2d 867, 871 (2d Cir. 1989).

Therefore, we will vacate the District Court's final judgment. We do not decide on appeal what *would* constitute appropriate equitable relief for US Airways because "equity calls for full factual findings rather than our speculation." *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 87 n.8 (3d Cir. 2011); *see also*, *e.g.*, *Hecht Co. v. Bowles*, 321 U.S. 321, 329

17

(1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *see generally Holland v. Florida*, 130 S. Ct. 2549, 2563 (2010) (discussing the bounded flexibility of courts of equity). Instead, we will remand for the District Court to "exercise its discretion under § 502(a)(3)." *Cigna*, 131 S. Ct. at 1880.

On remand, the District Court should engage in any additional fact-finding it finds necessary. In addition to the considerations discussed above, factors such as the distribution of the third-party recovery between McCutchen and his attorneys at Rosen Louik & Perry, the nature of their agreement, the work performed, and the allocation of costs and risks between the parties to this suit may inform the Court's exercise of its discretion to fashion "appropriate equitable relief."

## III.

Because we conclude that US Airways' claim for reimbursement under § 502(a)(3) of ERISA is subject to equitable limitations, we will vacate the District Court's final judgment and remand for further proceedings consistent with this opinion.