**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CGI TECHNOLOGIES AND SOLUTIONS
INC, in its capacity as sponsor and
fiduciary for CGI Technologies
and Solutions, Inc Welfare Benefit
Plan,
　　　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

RHONDA ROSE; NELSON LANGER
ENGLE PLLC,
　　　　　*Defendants-Appellants.*

No. 11-35127

D.C. No.
2:10-cv-00298-RSM

CGI TECHNOLOGIES AND SOLUTIONS
INC, in its capacity as sponsor and
fiduciary for CGI Technologies
and Solutions, Inc Welfare Benefit
Plan,
　　　　　　　　*Plaintiff-Appellant,*

　　　　　　v.

RHONDA ROSE; NELSON LANGER
ENGLE PLLC,
　　　　　*Defendants-Appellees.*

No. 11-35128

D.C. No.
2:10-cv-00298-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
February 9, 2012—Seattle, Washington

Filed June 20, 2012

7219

Before: Mary M. Schroeder and Ronald M. Gould, Circuit Judges, and Ralph R. Beistline, Chief District Judge.*

Opinion by Judge Gould;
Concurrence by Judge Schroeder;
Dissent by Chief District Judge Beistline

*The Honorable Ralph R. Beistline, Chief District Judge for the United States District Court for Alaska, sitting by designation.

**COUNSEL**

Matthew W.H. Wessler (argued), Public Justice, P.C., Washington, D.C., Leslie A. Brueckner, Public Justice, P.C., Oakland, California, Michael Nelson, Nelson Langer Engle PLLC, Paul L. Stritmatter, Strittmatter Kessler Whelan Coluccio, Hoquiam, Washington, for the defendants-appellants/cross-appellees.

Noah G. Lipschultz (argued), Littler Mendelson, P.C., Minneapolis, MN, Leigh Ann Tift, Littler Mendelson, P.C., Seattle, Washington, Joanna M. Silverstein, Littler Mendelson, P.C., Seattle, Washington, for the plaintiff-appellee/cross-appellant.

**OPINION**

GOULD, Circuit Judge:

Rhonda Rose ("Rose") appeals the district court's grant of partial summary judgment in favor of CGI Technologies and Solutions, Inc. ("CGI") in its action seeking "appropriate equitable relief" under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. CGI appeals the district court's grant of partial summary judgment in favor of Rose's counsel and co-defendant, Nelson Langer Engle, PLLC ("NLE"), dismissing NLE from the action. CGI also appeals the district court's grant of proportional fees and costs to NLE, deducted from CGI's recovery from Rose. We affirm in part and reverse in part, remanding the matter to the district court for further proceedings consistent with our decision.

**I**

Rose was employed by CGI which provides to its employees and their dependents a self-funded welfare benefits plan ("the Plan") governed by ERISA. The Plan includes a subrogation and reimbursement clause that expressly: (1) gives to CGI the right to full reimbursement for medical expenses paid on behalf of the beneficiary from any funds recovered by the beneficiary from a third party tortfeasor, (2) exempts CGI from responsibility for attorneys' fees paid in any such recovery, expressly disclaiming the application of the common fund doctrine; and (3) requires full reimbursement to CGI regardless of whether the beneficiary is made whole by the recovery.

In 2003, Rose was seriously injured in a car accident with a drunk driver, and consequently she had nerve damage and neck and back injuries that required surgical intervention. From this accident Rose also suffered several types of damages including past and future medical expenses, past and

future loss of wages, and pain and suffering. The parties stipulated that her personal injury claim was at least $1,757,943.08. With the assistance of NLE, Rose recovered a combined total of $376,906.84 from her action against the third party tortfeasor and from her underinsured motorist claim with her automobile insurance provider. The parties stipulated that this recovery represents only 21.44% of Rose's total damages.

Between 2007 and 2010, the Plan, on behalf of Rose, paid about $32,000 in medical expenses incurred as a result of Rose's injuries related to the accident. After Rose's recovery of these damages partially compensating her for her injuries, CGI asserted a first priority of payment and demanded to be reimbursed for the full amount the Plan had paid in medical expenses on Rose's behalf. Rose, through her counsel, declined to reimburse the Plan, and NLE placed the disputed amount in trust. CGI filed suit in the district court against both Rose and NLE seeking "appropriate equitable relief," under § 502(a)(3) in the form of a constructive trust and/or an equitable lien.

The parties filed cross-motions for summary judgment. The district court granted partial summary judgment in favor of NLE, concluding that the Plan's reimbursement provision could not be enforced against NLE. The district court granted partial summary judgment in favor of CGI, concluding that under § 502(a)(3), CGI, per the express terms of the Plan, was entitled to recover the full amount it paid in medical expenses on Rose's behalf. Finally, despite the Plan's language to the contrary, the district court also ruled that CGI was responsible for a proportional amount of the costs and fees incurred by NLE in recovering damages on Rose's behalf, and that this amount would be deducted from CGI's recovery from Rose. The parties now cross-appeal.

## II

We consider the parties' cross-appeals in turn.[1]

## A

We first address CGI's appeal of the district court's grant of partial summary judgment in favor of NLE. The district court dismissed NLE from the action, concluding that NLE was not a proper defendant under § 502(a)(3). Section 502(a)(3) states:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this sub-chapter or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added). The district court concluded that equitable relief under § 502(a)(3) could not be enforced against NLE because NLE, as Rose's counsel, was not a signatory to the Plan with its reimbursement provision. In reaching this conclusion, the district court relied principally on *Hotel Employees & Restaurant Employees International Union Welfare Fund v. Gentner*, 50 F.3d 719 (9th Cir. 1995). In *Gentner*, we affirmed the district court's dismissal of the beneficiary's attorney from the plan's action for reimbursement under § 502(a)(3), deciding that because the attorney was not a signatory to the plan, he was not a proper defendant. *Id.* at 721-22. *Gentner* in its holding established a general rule

---

[1]We review the district court's grant of summary judgment *de novo. Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011). "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(a)).

that a plan fiduciary may not assert a claim under § 502(a)(3) against a beneficiary's attorney who is not a signatory of the plan.

**[1]** Here, although we agree with the district court's conclusion that CGI may not enforce the Plan's reimbursement provision against NLE, we clarify that *Gentner*'s holding is no longer valid after the Supreme Court's ruling in *Harris Trust and Savings Bank v. Salomon Smith Barney*, 530 U.S. 238 (2000). *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that an intervening decision by a court of last resort controls where "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable"). In *Harris Trust*, the Court considered whether § 502(a)(3) authorized an action against a nonfiduciary "party in interest" who, acting in concert with a plan fiduciary, violated ERISA. Noting that "[t]he common law of trusts . . . offers a starting point for analysis of ERISA unless it is inconsistent with the language of the statute, its structure, or its purposes," the Court stated that under the common law of trusts:

> [I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.

530 U.S. at 250. Accordingly, the Court rejected the argument that liability under § 502(a)(3) depended "on whether ERISA's substantive provisions impose a specific duty on the

party being sued," *id.* at 245, and concluded that a third party transferee of "ill-gotten trust assets" could be held liable under ERISA provided that it is shown that "the transferee . . . had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Id.* at 251. Thus, "an action for restitution against a transferee of tainted plan assets satisfies the appropriate[ness] criterion in § 502(a)(3)." *Id.* at 253.

**[2]** *Harris Trust* left open "the universe of possible defendants" in an action for "appropriate equitable relief" under § 502(a)(3), which, contrary to our holding in *Gentner*, could include an attorney who was not a signatory to the plan. *Id.* at 246; *see also Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011) (en banc) ("In short, the Court [in *Harris Trust*] did not find a limit in § [502](a)(3) as to who could be sued.").

Under the principles of liability expressed in *Harris Trust*, we conclude that there is no unlawful transaction that would support CGI's action against NLE under § 502(a)(3). In *Harris Trust*, the third party defendant, Salomon Smith Barney, induced the plan's fiduciary to enter into a transaction prohibited under another provision of ERISA. *Id.* at 243. The Court concluded that Salomon Smith Barney's unlawful transaction supported the petitioners' § 502(a)(3) claim seeking rescission, restitution, and disgorgement. Here, by contrast, NLE engaged in no similar unlawful transaction. NLE merely honored Rose's request that it hold the entire disputed amount in trust subject to the resolution of CGI's claim for reimbursement.

The Fifth Circuit has interpreted *Harris Trust* to recognize a cause of action under § 502(a)(3) against an attorney who, on behalf of his client, holds disputed funds in trust pending adjudication of the rightful owner. In *Bombadier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir. 2003), the Fifth Circuit con-

cluded that *Harris Trust* supports a cause of action against "a non-'party in interest' attorney-at-law when he holds disputed settlement funds on behalf of a plan-participant client who is a traditional ERISA party." *Id.* at 353. Relying on the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Fifth Circuit reasoned that the action against the attorney was appropriate under § 502(a)(3) because it was an *in rem* action to establish a constructive trust, the beneficiary had "constructive possession of the disputed funds," and the attorney held the funds in trust subject to the beneficiary's direction to release the funds. 354 F.3d at 356.

[3] We disagree with the Fifth Circuit on the merits because as *Harris Trust* counsels, we find no unlawful transaction on the part of NLE to support NLE as a defendant. As did the attorneys in *Bombadier*, NLE has placed the entire disputed amount in trust pending the outcome of CGI's litigation. It has not asserted a right to the specific funds, nor appropriated the funds in any unlawful way.[2] NLE has agreed that pending the final adjudication of CGI's claim, it stands ready to disburse the fund in accordance with the court's order. We conclude that this holding of disputed funds in trust is reasonable conduct by the law firm. To conclude otherwise would introduce into ERISA a duty on the part of a beneficiary's counsel that unreasonably interferes with traditional and lawful attorney-client interactions. Moreover, there is no need to maintain a suit against an attorney who merely acts as a beneficiary's agent because naming the beneficiary who has constructive possession over the disputed funds will ensure proper disbursal where the presiding court so orders.

---

[2]By contrast, an attorney who before adjudication pays himself out of the disputed funds, effectively reducing the available amount to less than the plan's claim, would be an appropriate defendant under *Harris Trust*. *See Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) (describing as "clearly wrongful" the action of a beneficiary's attorney in actual possession of the disputed funds who diminishes the disputed funds by paying himself).

Because NLE did not engage in an unlawful transaction by placing the entire disputed amount in trust while the issue of CGI's rightful recovery remained unresolved, we conclude that CGI cannot maintain an action against NLE under § 502(a)(3).

**B**

We next consider together Rose's appeal from the district court's grant of partial summary judgment in favor of CGI and CGI's appeal from the district court's grant of partial summary judgment in favor of Rose, with respect to CGI's responsibility for its proportional share of NLE's attorneys' fees. The Plan called for full reimbursement to CGI regardless of whether Rose was made whole and disclaimed the application of the common fund doctrine to require CGI to contribute to attorneys' fees incurred in recovering funds from a third party tortfeasor. The district court concluded that under § 502(a)(3), CGI was entitled to full reimbursement of its outlay of the funds for medical expenses based on the Plan's express terms, but that notwithstanding the express terms of the Plan, CGI was responsible for its proportional share of the attorneys' fees that permitted Rose's recovery on her tort claim. Rose argues that full reimbursement was not "*appropriate* equitable relief," as mandated by § 502(a)(3), because it amounted to simple contract interpretation, a classic form of legal relief. She contends that "*appropriate* equitable relief" must encompass traditional equitable principles, including consideration of applicable traditional equitable defenses such as the make-whole doctrine which Rose argues should reasonably limit CGI's relief to less than full reimbursement.[3] CGI argues that the district court was required to honor

---

[3]Accordingly, Rose invokes a derivative version of the make-whole doctrine by arguing that CGI is entitled to a pro rata share in line with her limited recovery of 21.44% of her total damages estimate instead of arguing that CGI is not entitled to any recovery because she was not made whole.

the express terms of the Plan which mandated full reimbursement to CGI and disclaimed the application of traditional equitable defenses.

**1**

**[4]** The parties do not dispute that CGI's claim is equitable in nature, as is required for relief under § 502(a)(3). *See Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 369 (2006). Much like the respondent plan's claim in *Sereboff*, CGI's claim is equitable because it is "an action to enforce an equitable lien established by agreement." *Id.* at 368. Nor do the parties dispute that CGI is entitled to some form of "appropriate equitable relief." The question we must decide, however, is whether in granting "*appropriate* equitable relief," the district court, in its balancing of the equities, should take into account traditional equitable defenses that may limit CGI's recovery to less than full reimbursement despite Plan terms, or instead give primacy to basic contract interpretation to entitle CGI to full reimbursement and to exempt CGI from responsibility for attorneys' fees.

**[5]** This question of ERISA interpretation has not been decided previously by our circuit. Section 502(a) of ERISA describes who may enforce ERISA plans by bringing civil actions. 29 U.S.C. § 1132(a). Section 502(a)(1)(B) gives a legal cause of action to plan participants and beneficiaries but excludes plan fiduciaries from similarly enforcing the terms of the plan. A plan fiduciary's only means to seek relief is found in § 502(a)(3) which expressly limits a fiduciary's cause of action to one based on equitable principles that govern injunction and other equitable relief. *See* 29 U.S.C. §§ 1132(a)(1)(B), (a)(3); *Knudson*, 534 U.S. at 221 (noting that ERISA only authorizes fiduciaries to seek equitable relief under § 502(a)(3)).

**[6]** The Supreme Court has held that equitable principles must be satisfied for an ERISA fiduciary to gain relief under

§ 502(a)(3), but in considering such suits the Court has not yet squarely addressed whether the statutory term "*appropriate equitable relief*" requires consideration of traditional equitable defenses. Stated another way, we do not read the Supreme Court's precedents to have clarified if in giving "*appropriate equitable relief*" a court must take into account all or some traditional equitable defenses and considerations. *See Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) (affirming that "[§ ] 502(a)(3) invokes the equitable powers of the District Court," including the power to reform plan terms); *Sereboff*, 547 U.S. 356, 367-68 (2006) (holding that a contractual right to reimbursement from funds recovered from a third party supported a plan's action under § 502(a)(3) because the clause established an equitable lien by agreement); *Knudson*, 534 U.S. at 213 (holding that actions under § 502(a)(3) must be equitable in nature and § 502(a)(3) did not support a plan's action seeking *legal* restitution; namely, "a judgment imposing a merely personal liability upon the defendant to pay a sum of money"); *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (describing § 502(a)(3) as a "catchall provision[ ] . . . [that] offer[s] appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy," and noting that "[w]e should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others); *Mertens v. Hewitt Associates*, 508 U.S. 248, 256-58 & n.8 (1993) (holding that " '[e]quitable relief' [in § 502(a)(3)] must mean *something* less than *all* relief," and refers only to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)).

## 2

**[7]** The Supreme Court's decisions regarding § 502(a)(3) highlight the traditional division between law and equity that

evokes § 502(a)(3)'s authorization of "appropriate equitable relief;" such relief must be based on relief traditionally available at equity. *See Knudson*, 534 U.S. at 216-17 ("It is easy to disparage the law-equity dichotomy as 'an ancient classification' and an 'obsolete distinctio[n].' Like it or not, however, that classification and distinction has been specified by the statute; and there is no way to give the specification meaning —indeed, there is no way to render the unmistakable limitation of the statue a limitation at all—except by adverting to the differences between law and equity to which the statute refers.") (internal citations omitted).

The statutory term "appropriate equitable relief" thus places an "unmistakable limitation" on the availability of equitable relief, and the scope of this Congressionally-established limitation is set by referring to the differences between law and equity. A court must assess the degree to which the traditional equitable defenses that Rose raises here, namely the make-whole doctrine and the common fund doctrine, are applicable in delimiting those categories of relief that were typically available in equity and that therefore hem in what is "appropriate equitable relief" within the meaning of § 502(a)(3).

Our law previously has set some guidelines about equitable relief in other contexts, but it is not a certainty that each principle thus established should be considered to be incorporated within the limitation of § 502(a)(3) that equitable relief be "appropriate." For example, "it is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir. 1995). Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*

*v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common-fund doctrine reflects the traditional practice in courts of equity, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees." *Id.* Both the make-whole doctrine and the common fund doctrine are rooted in concerns about unjust enrichment, a traditional principle of equitable relief. *See id.* (common fund rule); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 1115, 1119-29 (9th Cir. 2010) (make-whole rule). Traditionally at equity, it was within the province of the court to consider concerns of unjust enrichment when fashioning equitable remedies such as an equitable lien or a constructive trust, even where contract terms attempted to limit their application. *See, e.g.*, 1 Palmer, The Law of Restitution § 1.1, at 4 ("In equity the principal remedy [to unjust enrichment] is constructive trust; but equitable lien, subrogation, and accounting are techniques frequently used to prevent unjust enrichment"); 4 Palmer, The Law of Restitution § 23.18(d) at 472-74 (stating that "the principle of unjust enrichment . . . should serve to limit the effectiveness of contract provisions which in terms provide for reimbursement out of the insured's tort recovery without regard to whether or the extent to which, that recovery includes medical expense").

Relying on our decision in *Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, CGI argues that the district court must remain faithful to the terms of the Plan that disclaim the application of traditional equitable defenses. 64 F.3d 1389 (9th Cir. 1995). In *Barnes*, we stated that "[w]e would not apply the interpretive 'make-whole rule' as a 'gap-filler' if the subrogation clause in the Plan document specifically allowed the Plan the right of first reimbursement out of any recovery Barnes was able to obtain even if Barnes were not made whole." *Id.* at 1392. Our discussion in *Barnes* is not dispositive of the question we decide today, however, because the relief sought in *Barnes* was purely *legal* in nature, namely a beneficiary's challenge of the plan's denial of benefits, and so appropriately subject to our observation that the parties

could contract out of the application of the make-whole doctrine. Here, however, we consider the scope of "appropriate equitable relief" under § 502(a)(3), and whether the district court is bound by restrictive contract terms in its formulation of *equitable* relief. Neither Congress nor the Supreme Court has said that any such contractual limitation necessarily curtails the district court's equitable powers under § 502(a)(3). To the contrary, the Court in *Amara* reasoned that the district court, sitting as a court of equity in a § 502(a)(3) action, need not honor the express terms of the Plan where traditional notions of equitable relief so require. *See Amara*, 131 S. Ct. at 1879 (stating that contract reformation is within the equitable powers of the district court); *see also US Airways v. McCutchen*, 663 F.3d 671, 679 (3rd Cir. 2011) ("The importance of the written benefit plan is not inviolable, but is subject—based upon equitable doctrines and principles—to modification and, indeed, equitable reformation under § 502(a)(3)." (citing *Amara*, 131 S. Ct. at 1879)).

**3**

**[8]** The Circuits have split on whether strict adherence to the terms of an ERISA plan that disclaims the application of traditional equitable defenses constitutes "appropriate equitable relief." Several circuits, and notably the Eleventh, Eighth, Seventh and Fifth Circuits, have stressed the primacy of an ERISA plan's express language, and have decided that in balancing the equities, simple contract interpretation that provides for full reimbursement per the plain terms of a plan that disclaims the application of traditional equitable defenses such as the make-whole doctrine and the common fund doctrine, constitutes "*appropriate* equitable relief" under § 502(a)(3). *See, e.g., Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1238 (11th Cir. 2010) (stating that the application of "federal common law to override the Plan's controlling language, which expressly provides for reimbursement regardless of whether [the beneficiary] was made whole by his third-party recovery, would frustrate, rather than effectu-

ate, ERISA's 'repeatedly emphasized purpose to protect contractually defined benefits.' "); *Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Shank*, 500 F.3d 834, 839 (8th Cir. 2007) (stating that "[n]othing in the statute suggests Congress intended that section 502(a)(3)'s limitation of the [plan's] recovery to "appropriate equitable relief" would upset these contractually-defined expectations [such as a make-whole rule disclaimer]. Indeed, ERISA's mandate that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), establishes the primacy of the written plan"); *Administrative Committee of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Varco*, 338 F.3d 680, 691-92 (7th Cir. 2003) (stating that in an action under § 502(a)(3), "it is inappropriate to fashion a common law rule that would override the express terms of a private plan unless the overridden plan provision conflicts with statutory provisions or other policies underlying ERISA . . . . Those cases which have applied the federal common fund doctrine in the favor of individual ERISA participants have done so, correctly, only in the absence of controlling plan language"); *Bombadier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348, 361 (5th Cir. 2003) (stating that "the Plan's terms not only give it the right to recover benefits 'to the extent of any and all' settlement payments, but explicitly state that the participant must bear the fees and costs associated with his tort action . . . neither the federal nor Texas common fund doctrine may be invoked to prevent or reduce the Plan's recovery of the funds that it advanced to [the beneficiary] up to the full amount of his recovery from the tortfeasor"); *see also Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000) (suggesting that in an action under § 502(a)(3), the parties to an ERISA plan could, by contract, alter the "background of common-sense understandings and legal principles [such as the common fund doctrine] that . . . operate as default rules

to govern in the absence of a clear expression of the parties' intent that they not govern").

**[9]** By contrast, only the Third Circuit, in *US Airways v. McCutchen*, has concluded "that Congress intended to limit the equitable relief available under § 502(a)(3) through the application of equitable defenses and principles that were typically available in equity" despite the negation of such defenses and principles in an ERISA plan. 663 F.3d at 676. McCutchen, who participated in an ERISA-governed employee welfare benefits plan, was injured in a car accident and the plan paid $66,866 in medical expenses on his behalf. *Id.* at 672. McCutchen recovered $110,000 from third parties, and the plan, based on a subrogation clause in the plan requiring full reimbursement, sought to recover the full $66,866 from McCutchen even though McCutchen's net recovery was less than that amount after paying a 40% contingency fee to his attorney. *Id.* at 673.

Like Rose here, McCutchen argued that notwithstanding the plan terms, it was unfair to grant the plan full reimbursement because he was not fully compensated for his injuries and the plan did not contribute to attorneys' fees and costs. *Id.* at 674. The Third Circuit agreed, finding no indication in ERISA or in the Supreme Court's jurisprudence that Congress intended to limit relief under § 502(a)(3) to "traditional equitable categories" yet not limit relief "by other equitable doctrines and defenses that were traditionally applicable to those categories." *Id.* at 676-79.

**[10]** We agree with the Third Circuit that under § 502(a)(3), the district court, in granting "*appropriate* equitable relief," may consider traditional equitable defenses notwithstanding express terms disclaiming their application. *Id.* at 679 (stating that in equity, "contractual language was not as sacrosanct as it is normally considered to be when applying breach of contract principles at common law . . . [, and] equitable principles can apply even where no one has committed

a wrong"). While a weighing of the equities, including the consideration of equitable defenses, might support that full reimbursement per the Plan's terms is "*appropriate* equitable relief," like the Third Circuit we disagree with the other circuits to the extent that they have held that § 502(a)(3) categorically excludes the application of traditional equitable defenses where the plan disclaims their application and requires reimbursement as set by the plan. *Id.* at 678. Congress in § 502(a)(3) empowered district courts to consider equitable principles in granting injunctive relief to a plan fiduciary against a plan beneficiary, and we will not read out of the statute the limitation that equitable relief be appropriate.

CGI argues, however, that under *Sereboff* "*appropriate* equitable relief" is consistent with simple interpretation of the express terms of the plan provision in question requiring full reimbursement without reference to traditional limitations to recovery such as the make-whole doctrine and the common fund doctrine. In *Sereboff*, the parties did not raise the issue below, and the Court expressly declined to address whether "*appropriate* equitable relief" encompasses equitable defenses such as the make-whole doctrine or the common fund doctrine. *Sereboff*, 547 U.S. at 368 n.2. CGI would have us decide that the parties may, by contract, limit the district court's ability, in its capacity as a court of equity under § 502(a)(3), to fashion "*appropriate* equitable relief" along these lines. But we are not persuaded that Congress intended to permit a plan to so limit the equitable powers of the district court in an action under § 502(a)(3). Instead, without limitation, the Supreme Court has said that "[§ ] 502(a)(3) invokes the equitable powers of the District Court." *See Amara*, 131 S. Ct. at 1880. In other contexts the Supreme Court has made clear that a federal court's powers of traditional equitable relief are broad. *See, e.g., Brown v. Plata*, 131 S. Ct. 1910, 1944 (2011) (stating that "[o]nce invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies") (internal quotation marks omitted); *Grupo Mexicano de Desarrollo S.A. v.*

*Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19, 322 (1999) (stating "that equity is flexible; but in the federal system, at least, that flexibility is confined within the broad boundaries of traditional equitable relief."); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 12 (1970) (stating that "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies"); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (stating that "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction"); *Hecht Co. v. Bowles*, 321 U.S. 321, 330 (1944) (stating that "[t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it"). We, of course, have said the same. *See, e.g., S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (stating that "a district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities law") (internal quotation marks and alteration omitted); *United States v. Alisal Water Corp.*, 431 F.3d 643, 654 n.5 (9th Cir. 2005) (recognizing "district court's broad authority to enforce federal laws through exercise of its equitable powers"). Absent an express indication that either Congress or the Supreme Court has limited a district court's powers to fashion "*appropriate* equitable relief," as contended by CGI, we decline to read such a contractual limitation into a statutory term. *See Hecht*, 321 U.S. at 330 (stating that "if Congress desired to make such an abrupt departure from traditional equity practice as is suggested, it would have made its desire plain").

**[11]** We do not see good reason in interpreting § 502(a)(3) to recede from the traditional broad powers of a court in equity. We therefore hold that the parties may not by contract deprive the district court of its power to act as a court in

equity in a § 502(a)(3) action. Contract terms should be considered by the court in assessing what is the proper scope of equitable relief. But notwithstanding the express terms of the Plan disclaiming the application of the make-whole doctrine and the common fund doctrine, it is within the district court's broad equitable powers under § 502(a)(3) not to give those provisions a controlling weight in fashioning "*appropriate* equitable relief*.*"

We express no opinion at this time on what result the district court, in exercising those powers, should reach. We do not restrict the ability of the district court to hold further hearings and take further evidence relevant to how the phrase "appropriate equitable relief" should be interpreted in § 502(a)(3) and applied in this case to the claim of CGI against Rose.

## III

**[12]** We AFFIRM the district court's grant of summary judgment in favor of NLE, dismissing NLE from the action. However, because we see no indication that in fashioning "appropriate equitable relief" for CGI, the district court did more than interpret the plain terms of the reimbursement provision, and no indication that the district court considered traditional equitable principles in assigning responsibility to CGI for attorneys' fees and costs, we VACATE the judgment in favor of CGI, VACATE the judgment that NLE deduct fees and costs from CGI's entitlement, and REMAND to the district court for such proceedings as are appropriate for the district court to determine what is "appropriate equitable relief" in context here. In doing so the district court should apply traditional equitable principles including consideration of traditional equitable defenses. The amount to which CGI is entitled to recover under § 502(a)(3) and the proportional amount of attorneys' fees and costs for which CGI is responsible under § 502(a)(3) must be consistent with principles of equity and not merely contract.

AFFIRMED in part and VACATED and REMANDED in part for further proceedings consistent with our decision. Each party shall bear its own costs.

---

SCHROEDER, Circuit Judge, concurring:

I concur in Judge Gould's good opinion. It reaches the right result, and reconciles ERISA's statutory language, giving courts power to fashion "appropriate equitable relief," ERISA § 502(a)(3), with Supreme Court discussions of the statute. The ERISA Plan document in this case provided that if the Plan paid out benefits to a beneficiary who later recovered tort damages from a third party, the Plan would have a first priority for total reimbursement from the recovery—even when, as in this case, the recovery represented a small fraction of the beneficiary's damages and the beneficiary would be left with very little. This unfairness was magnified by a provision purporting to disclaim the equitable common fund doctrine—a provision that, if enforced, would mean the Plan would not have to contribute to the fees of the attorneys who recovered the money from which the Plan would be reimbursed.

The district court considered itself bound to apply the provisions of the Plan document. The result—leaving the beneficiary here vastly undercompensated for her actual damages, and the Plan unjustly enriched—is manifestly unfair. It is also inconsistent with Congress's purpose in enacting ERISA: "promot[ing] the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). Thus in fashioning "appropriate equitable relief" under ERISA § 502(a)(3), the district court is not necessarily bound to the terms of the Plan document. "The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud." *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1879 (2011).

The Third Circuit recently decided a case materially identical to this one, and refused to enforce the terms of the Plan as written. It said:

> "[T]he judgment requiring McCutchen to provide full reimbursement to US Airways constitutes inappropriate and inequitable relief. Because the amount of the judgment exceeds the net amount of McCutchen's third-party recovery, it leaves him with less than full payment for his emergency medical bills, thus undermining the entire purpose of the Plan. At the same time, it amounts to a windfall for US Airways, which did not exercise its subrogation rights or contribute to the cost of obtaining the third-party recovery. Equity abhors a windfall."

*US Airways, Inc. v. McCutchen*, 663 F.3d 671, 679 (3d Cir. 2011).

We are therefore correctly vacating the district court's judgment and remanding for the district court to fashion "appropriate equitable relief," pursuant to § 502(a)(3). "Appropriate" relief would presumably include applying the equitable make-whole doctrine, or fashioning other fair relief by reducing the Plan's recovery to an amount equivalent to the proportion of the beneficiary's actual damages that she recovered. Traditional equitable remedies would also appear to support requiring the Plan to contribute to the firm's fees under the common fund doctrine. The majority recognizes such traditional equitable principles should apply to the facts presented in this case.

---

BEISTLINE, Chief District Judge, dissenting:

I respectfully dissent. While the majority reaches a *fair* result under the facts presented, it does so at the expense of

the plain language of the Plan and effectively usurps the role of Congress in establishing restrictions on how such plans may manage themselves. In my view, the District Court granted "*appropriate* equitable relief" when it enforced the reimbursement provision of the Plan. The majority expresses no opinion as to whether CGI is entitled to reimbursement, but simply states that, in the interest of eliminating unjust enrichment, the District Court should have considered the make-whole doctrine and the common fund doctrine in its determination of what constituted an *appropriate* equitable remedy under 29 U.S.C. § 1132(a)(3). Yet, in reaching its conclusion, the majority disregards the fact that both doctrines are disclaimed in the language of the Plan. By expressly abandoning both doctrines, the Plan precludes their application. While I can understand the merits of these doctrines, I do not believe that we can now inject principles into the Plan that the Plan purposefully and specifically excluded. I do not view the "appropriate equitable relief" provision as a mechanism for courts to rewrite ERISA plans. Such an interpretation invites litigation and unnecessarily complicates management of these plans. If Congress intended ERISA plans to include these equitable defenses notwithstanding the express terms of the plan disclaiming them, it certainly could have said so.

I would, therefore, AFFIRM the District Court to the extent it applied the plain language of the Plan and REVERSE to the extent that it did not.