**Lenai MULL et al.**

v.

**MOTION PICTURE INDUSTRY HEALTH PLAN et al.**

**Case No. CV 12–06693–VBF–MAN.**

United States District Court, C.D. California.

Dec. 20, 2012.

---

**156.** 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (emphasis original).

**157.** *See id.*

Daniel E. Wilcoxen, Sacramento, CA, Donald M. Decamara, Donald M. De Camara Law Offices, Carlsbad, Ca, for Lenai Mull et al.

Elizabeth Rosenfeld, Kathryn Jane Halford, Wohlner Kaplon Phillips Young and Cutler, Encino, CA, for Motion Picture Industry Health Plan et al.

## PROCEEDINGS (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART THE MOTION TO DISMISS; ALLOWING PLAINTIFFS TO AMEND THE COMPLAINT; AND ALLOWING ALL PARTIES TO FILE DISPOSITIVE MOTIONS

VALERIE BAKER FAIRBANK, District Judge.

Linda Kanter, Courtroom Deputy.

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants—the Motion Picture Industry ("MPI") Health Plan and its Board of Directors ("the Plan")—have moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief can be granted. The Court will grant the motion to dismiss *with prejudice* as to plaintiffs' claim that the Plan's "third-party reimbursement" provision is unenforceable because it was not presented and explained with sufficient clarity ("the clarity claim"). The Court will deny the motion to dismiss without prejudice, however, as to plaintiffs' claim that the Plan's application of that same provision should be subject to equitable defenses. On the equitable-defense issue, the plaintiffs may well be able to plead a claim under a cognizable legal theory, and should be afforded an opportunity to rectify any inadequacies in their pleading if they so choose.[1] In other words, the de-

---

1. In November 2012, this Court issued Orders finding the motion suitable for decision without oral argument, granting defendants leave to file an over-length reply, and granting plaintiffs leave to file a sur-reply no later than December 12, 2012 (Docs 16, 19, 20). That deadline has passed, and plaintiffs have not filed a surreply or a motion for extension of time.

fendants prevail on the clarity claim, but the plaintiffs' equitable-defense claim survives for the time being. Finally, the Court will grant plaintiffs leave to amend the complaint and will allow all parties to file dispositive motions on a schedule set forth below.

### PROCEDURAL HISTORY and BACKGROUND

Norman Mull ("Mull") is a "wrangler" who resides in California, and he has been employed in the motion picture industry as a wrangler, a stunt man, and on one occasion as an actor. *See* Complaint filed August 3, 2012 ("Comp") ¶¶ 3–4; *see also* Internet Movie Database, *http://www.imdb.com/name/nm0611899*. In connection with that employment, the Plan provided medical insurance coverage to Mull, his wife Danielle Mull, and his daughter Lenai Mull ("plaintiffs"), *see* Comp ¶ 4.

█ The complaint does not appear to allege that either defendant was the plan administrator. ERISA defines plan administrator as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary [of Labor] may by regulation prescribe." 29 U.S.C. § 1002(16)(A). "[T]he plan administrator is not determined by the actions or responsibilities of a particular party, but by the language in the coverage documents." *Turnipseed v. Educ. Mgmt. LLC's Employee Disability Plan*, 2010 WL 140384, *4 (N.D.Cal. Jan. 13, 2010). The plaintiffs may rectify this oversight if they choose to amend the complaint. *Cf. Lynn v. PG & E Co.*, 2010 WL 2557383, *4 (N.D.Cal. June 21, 2010) ("ERISA authorizes claims against the relevant plan and plan administrator. Because the complaint fails to allege that PG & E is the plan or plan administrator, it fails to state a claim upon which relief may be granted. Accordingly, the Court grants defendant's motion to dismiss on this ground, with leave to amend to name the proper defendant or plead that PG & E is a proper defendant."); *Larson v. Providence Health Plan*, 2009 WL 562815, *5 (D.Or. Mar.2, 2009) ("[P]laintiffs' complaint does not allege that PSH–O is the health plan or a plan administrator. * * * [T]herefore ... defendants' motion for judgment on the pleadings as to ... PHS–O should be granted. If, however, plaintiffs can allege in good faith that ... PSH–O is or was a plan administrator, they may file an amended complaint....").

Plaintiffs allege that while Lenai was entitled to medical benefits under the Plan as a dependent of her father, she sustained severe injuries in an auto accident in February 2010, *see* Comp ¶ 6. Lenai underwent surgeries designed to stabilize fractures, inflate a lung, and implant rods in her thighs, causing her to miss substantial time from college and to endure physical and mental pain and suffering, *see id.* Lenai's accident-related medical expenses were about $190,000 as of August 3, 2012, of which the Plan paid $148,000, *see id.*

Plaintiffs allege that the driver who caused the accident settled Lenai's claims against him for his liability insurance policy limit of $100,000 ("the third-party settlement"). By contrast, plaintiffs allege, "the full value" of Lenai's "severe injuries" is about $2 million, such that her settlement with the driver's insurance carrier did not make her whole. *See* Comp ¶ 7. This allegation is material to plaintiffs' claim that the Court should let them assert equitable defenses to limit the enforcement of the reimbursement provision, such as the make-whole doctrine. *See generally CGI Techs. & Solutions, Inc. v. Rose*, 683 F.3d 1113, 1121 (9th Cir.2012) ("it is a

general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, she has been made whole.") (citing *Barnes v. Indep. Auto. Dealers Ass'n of Calif. H & W Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir.1995)); *Aetna Life Ins. Co. v. Kohler*, 2011 WL 5321005, *6 (N.D.Cal. Nov. 2, 2011); *accord Cagle v. Bruner*, 112 F.3d 1510 (11th Cir.1997) (holding that the make-whole doctrine applies in favor of a beneficiary "where an ERISA plan neither explicitly adopts nor disavows the doctrine"); *see, e.g., Providence Health Plans of Oregon v. Simnitt*, 2009 WL 3713131 (D.Or.2009) ("This court ruled that a beneficiary must be fully compensated for her injuries, or 'made whole,' before an insurance company may enforce a right to subrogation. Further, the court ruled that the language of the ERISA plan at issue did not abrogate the 'make whole' doctrine. Following this ruling, the parties stipulated that defendant had not been made whole by her recovery and that judgment be entered in defendant [beneficiary]'s favor.").

*Statutory and Regulatory Provisions Cited by the Parties, and Plaintiffs' Theory of the Case.*

As discussed below, defendants contend that the clear language of the Plan requires Lenai to turn the $100,000 third-party settlement proceeds over to the Plan, as reimbursement for its payment of medical claims on her behalf, pursuant to a reimbursement provision entitled "Claims Involving Third Party Liability" ("the reimbursement provision") which appears at pages 49–50 of the 195-page Active MPI Health Plan Summary Plan Description ("SPD"). *See generally Unisys Med. Plan v. Timm*, 98 F.3d 971, 973 (7th Cir.1996) ("Unlike subrogation, which arises under state law and allows the insurer to stand in the shoes of its insured, reimbursement is a contractual right governed by ERISA and comes into play only *after* a plan member has received personal injury compensation. While subrogation and reimbursement may have similar effects, they are distinct doctrines."). Defendants further contend that until and unless Lenai turns over the $100,000, the plan entitles them to deny medical claims submitted by any of the Mulls at least up to the $100,000 the Plan is owed under the provision.[2] *See* Comp ¶ 8. The reimbursement provision provides in pertinent part as follows:

If you or your dependent's injury or illness was, in any way, caused by a third party who may be legally liable or responsible for the injury or illness, no benefits will be payable nor paid under any coverage of the MPI Health plan unless you contractually agree in writing in a form satisfactory to the MPI Health Plan, to do all of the following:

1. Provide the MPI Health Plan with a written notice of any clam made against the third party for damages as a result of the injury or illness;

2. Agree to reimburse the MPI Health Plan for benefits paid by the Plan from any Recovery ... when the

---

2. In *CIGNA Corp. v. Amara*, —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011) ("*Amara* "), the Supreme Court overruled the Ninth Circuit's "prior decisions that had treated SPD language as if it were an enforceable part of the [employee benefit] plan." *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1165 (9th Cir.2012). "In holding that the SPD language was not part of the plan, the Court made it clear that 'summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B) [which is 29 U.S.C. § 1132(a)(1)(B) ].' " *Skinner*, 673 F.3d at 1165 (quoting *Amara*, ——U.S. at ——, 131 S.Ct. at 1878).

Recovery is obtained from or on behalf of the third party or the insurer of the third party or from your own uninsured or underinsured motorist coverage....

\* \* \*

7. Direct any legal counsel retained by you or any other person acting on your behalf to hold that portion of the Recovery to which the Plan is entitled in trust for the sole benefit of the Plan and to comply with and facilitate the reimbursement to the MPI Health Plan of the monies owed it (as described and defined below).

If you or your dependent fails to comply with any of the aforementioned requirements, no benefits will be paid with respect to the injury or illness. Whatever benefits have already been paid, they may be recouped by the MPI Health Plan.

Reimbursement of benefits paid by the Plan for an injury or illness for which you or your dependent has received any Recovery is the liability of the Participant. If reimbursement is requested and not received by the Plan, in addition to any other available remedies, the amount of such benefits (including any applicable in interest), as described below, will be deducted from all future benefit payments to or on behalf of the Participant and/or any dependent, until the overpayment is resolved. (*Please refer to page 44 under Overpayment.*)

\* \* \*

*The Plan's Right to Recovery Reimbursement*

The term "Recovery" includes any amount awarded to or received by way of court judgment, arbitration award, settlement or any other arrangement, from any third party ... related to the illness or injury, without reduction for any attorneys' fees paid or owed by you

or on your behalf, and without regard to whether you or your dependent have been "made whole" by the Recovery.... If the full amount paid by the MPI Health Plan is not reimbursed from the Recovery, the Participant (and eligible dependent, if applicable) shall continue to owe to the Plan such unpaid amount, up to the full amount of the Recovery. If the benefits paid by the MPI Health Plan in connection with the illness or injury exceeds the amount of the Recovery, neither the Participant nor his or her eligible dependents shall be responsible for any benefits paid in excess of the amount of the Recovery, other than interest as described below.

*Your acceptance of benefits from the MPI Health Plan for injuries or illness caused by a third party, shall act as a waiver of any defense to full reimbursement of the Plan from the Recovery, including any defense that you have not been "made whole" by the Recovery, or that the Plan should pay a portion of the attorneys fees and costs you incur in connection with your claims against the third party ....* \* \* \*

Comp., Ex. 1 at 77–78 (emphasis added). The third-party reimbursement provision refers to a provision entitled Overpayments, which provides as follows:

Overpayments. Every effort is made to assure prompt and accurate payment of your claims. If we discover that our payment(s) was incorrect (overpaid due to other health carrier payments, third-party liability, incorrect billings, miscalculations, etc.), the Participant is responsible for refunding the overpaid amount. \* \* \*

In addition to other remedies, ... a full refund (including interest, if applicable) will be deducted from all future benefit payments for you *or your eligible depen-*

*dents* until the overpayment and any interest has [sic] been recovered.

Comp., Ex. 1 at 72 (SPD page 44) (emphasis added).

Yet the plaintiffs complain, unpersuasively, that the reimbursement provision cannot be enforced, as a matter of law, because it is not presented in a logical fashion that enables the average participant to find it and because somehow the average participant would be unable to fully understand the provision and how it interacts with other provisions. For one thing, plaintiffs complain, the reimbursement provision is not reflected in a separate entry in the SPD's main index, but rather appears in a sub-index on SPD page 27. Moreover, plaintiffs complain that the reimbursement provision appears in the Coordination of Benefits section of the SPD sub-index even though it does not address coordination. Conversely, plaintiffs allege, the reimbursement provision "does not appear in close conjunction with" the summary of benefits for Hospital and Health Plan Services (SPD pp. 35–39) or in close conjunction with the Health Plan Options Summary (SPD pp. 29–33). *See* Comp ¶ 8.

Paragraphs 9–13 of the complaint contain legal argument rather than factual allegations, centering primarily on 29 C.F.R. § 2520.102–2 and–3. According to plaintiffs, both 29 U.S.C. § 1022 and accompanying regulations require that SPDs make these descriptions and explanations in a manner that can be understood by the average participant and is not misleading or incomplete. *See* Comp ¶ 9. Beginning with the statute itself, 29 U.S.C. § 1022(a) provides that an SPD

> shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably ap-

prise such participants and beneficiaries of their rights and obligations under the plan. * * *

In turn, the next subsection, 29 U.S.C. § 1022(b), requires every SPD to contain information including, *inter alia,*

> a description of the relevant provisions of any applicable collective bargaining agreement; **the plan's requirements respecting eligibility and benefits; ...; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits;** the source of financing of the plan ....

(Emphasis added.) Turning from the ERISA statute to the implementing regulations, plaintiffs contend that 29 C.F.R. § 2520.102–3(*l*) requires SPDs to clearly describe anything which could result in reduction or recovery of benefits that a participant might otherwise expect to receive, and to summarize any plan provisions that might eliminate benefits. *See* Comp ¶ 9. Indeed, § 2520.102–3(*l*) requires that all SPDs include this information:

> For both pension and welfare benefits plans, a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery (e.g., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits required by paragraphs (j) and (k) of this section. * * *

The Court now looks to the cross-referenced regulations, 29 C.F.R. § 2520.102–3(j) and (k). The regulations at 29 C.F.R. § 2520.102–3(k) and –3(j)(1) deal only with employee pension benefit plans and thus are not relevant in this case. The regulation at § 2520.102–3(j)(2) requires that an employee welfare benefit plan's SPD in-

clude, *inter alia,* "a statement of the conditions pertaining to eligibility to receive benefits, and a description or summary of the benefits." The regulation at § 2520.102–3(j)(2) requires that if an employee welfare benefit plan is a group health plan, its SPD must include, *inter alia,* "a description of: cost-sharing provisions, including premiums, deductibles, co-insurance, and copayment amounts for which the participant or beneficiary will be responsible; [and] *any annual or lifetime caps or other limits on benefits under the plan . . . .*" (Emphasis added.)

The plaintiffs contend that the Plan's reimbursement provision (pages 49–50 of the SPD) is a reduction or restriction of benefits which violates the aforementioned regulation because it is not clear, and because it effectively hides the reimbursement provision in a section addressing Coordination of Benefits when it does not deal with coordination of benefits. Plaintiffs further contend that the Plan's reimbursement provision violates these regulations because it is not placed in close conjunction with the summary of benefits, nor does the summary of benefits cross-reference the reimbursement provision (which according to plaintiffs "purports to completely eliminate the health care benefits under the Plan"). *See* Comp ¶ 9.

Next, the plaintiffs contend that the reimbursement provision is contrary to Ninth Circuit precedent governing the courts' exercise of their equitable powers in ERISA cases. Specifically, the plaintiffs complain that the reimbursement provision purports to waive any equitable defenses that a participant might have against enforcement, such as the make-whole doctrine, the common-fund doctrine, and equitable apportionment, whereas the Ninth Circuit, according to plaintiffs, has held that "all equitable defenses may be raised against [a Plan]'s assertion of ERISA reimbursement claims." *See* Comp

¶ 10 (citing *CGI Technologies and Solutions, Inc. v. Rose,* 683 F.3d 1113 (9th Cir.2012), *pet. cert. filed,* 81 U.S.L.W. 3114 (U.S. Aug. 24, 2012) (No. 12–240)).

The plaintiffs also complain that the reimbursement provision "fails to limit the Plan's right of recovery to medical expenses which the Plan paid and to which . . . Lenai . . . recovered title in her personal injury action. Since Lenai Mull only recovered about 5% of her total damages in her settlement [$100,000 from the negligent driver's insurance carrier compared to an alleged total of $2 million in costs caused to Lenai due to the accident], she also recovered title to only 5% of her medical expenses incurred." Comp ¶ 10. In their brief, plaintiffs elaborate that in accordance with principles set forth in *Palmer on Restitution* (cited favorably by the Ninth Circuit in the ERISA case *CGI,* 683 F.3d at 1124), the Plan "would be unjustly enriched if it recovered more than the [pro]portion of medical expenses which Lenai Mull recovered in her personal injury [action] (presumably [$100,000 / $2 million] × $100,000 [which Lenai received from the third party] = $5,000)." Plaintiffs' Brief filed Nov. 6, 2012 in Opposition to Motion to Dismiss ("P's Opp") at 5.

Plaintiffs further complain that the Plan and the SPD are contracts of adhesion which "violate plaintiffs' reasonable expectations concerning both their health coverage and their ability to retain the proceeds of any damages they may recover for personal injuries they may suffer." Comp ¶ 11.

Finally, plaintiffs complain that the reimbursement provision purports to authorize the Plan to hold both participants and their dependents liable for reimbursement of amounts which one participant receives from a third party. Plaintiffs contend that Supreme Court precedent prohibits such a provision in an ERISA plan. *See* Comp

¶ 12. Plaintiffs allege that by enforcing the unenforceable provision—i.e. by refusing to pay any of their covered expenses until it has denied claims equal to the $100,000 she received from the third party and should, in the Plan's view, turn over to the Plan pursuant to the reimbursement provision—the Plan has caused all the plaintiffs, not just Lenai, to suffer delays in obtaining necessary care unrelated to Lenai's injuries. *See id.*

*The Plaintiffs' Claims.*

**In Count One, the plaintiffs seek declaratory relief,** *see* Comp ¶ 16. First, they seek a declaration that the reimbursement provision summarized at SPD 49–50 is unenforceable because it violates 29 U.S.C. § 1022 and 1132(a)(1)(B) & (a)(3) and 29 C.F.R. §§ 2520.102–2 & –3. *See* Comp ¶ 15. Second, plaintiffs seek a declaration that the Plan cannot use the reimbursement provision to recover from plaintiffs an amount greater than the Plan has paid, because that would not constitute " 'appropriate equitable relief' pursuant to 29 U.S.C. § 1132(a)(3)." *See* Comp ¶ 15. Third, plaintiffs seem to seek a declaration that the Plan is not "entitled to any constructive trust or equitable lien [against Lenai's settlement] . . . because there has been no fraud or other wrongful conduct on the part of the plaintiff[s], [as] would be necessary to support such causes of action [sic]." Comp ¶ 15; *cf., e.g., Mairena v. Enterprise Rent–A–Car Hosp. Ins. Plan,* 2010 WL 3931098, *9 (N.D.Cal. Oct. 6, 2010) (plan's allegations were sufficient to state an actionable counterclaim for imposition of a constructive trust or equitable lien; "Plaintiff has not cited any authority after *Sereboff* indicating that the plan fiduciary must also establish fraud or wrongdoing in order to create a constructive trust or equitable lien by agreement.").

The Prayer for Relief makes clear that the plaintiffs also seek a declaration that defendant's putative "equitable claim for reimbursement under 29 U.S.C. § 1132(a)(3)" fails entirely for two reasons: (1) because the claim is barred by the make-whole rule and (2) because the Plan cannot demonstrate any fraud or other wrongful conduct by plaintiffs that would support imposing a constructive trust or equitable lien on Lenai's $100,000 settlement proceeds. *See* Comp at 11 Prayer ¶¶ 2 & 7. Alternately, if the Court holds that defendant's "equitable claim for reimbursement under 29 U.S.C. § 1132(a)(3)" is barred by the federal common law make-whole doctrine, plaintiffs seek a declaration that the reimbursement claim is limited by the doctrine of equitable apportionment to its "fair share" of Lenai's third-party settlement. Specifically, the plaintiffs seek a declaration that the Plan's share of Lenai's third-party settlement cannot be more than "the medical expenses to which plaintiff actually recovered title in her personal injury case." *See* Comp at 11 Prayer ¶¶ 3–4.

In Count Two, the plaintiff seek injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), which they say "provides that an ERISA plan participant can seek to enjoin any act or practice that violates any provision of ERISA or the terms of the plan or to obtain other appropriate equitable relief." *See* Comp ¶ 18. The Prayer for Relief makes clear that plaintiffs seek an order directing the Plan to stop claiming self-help credits under the reimbursement provision and to pay all benefits otherwise due under the plan. *See* Comp at 12 Prayer ¶ 9.

In Count Three, the plaintiffs plead a cause of action for recovery of benefits due under the plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). They contend that the Plan is wrongfully refusing to pay all plaintiffs' covered medical expenses on the premise that Lenai has not yet fulfilled her contractual obligation to give the Plan the

$100,000 she received in her settlement with the driver's insurance carrier. *See* Comp ¶ 21. Count Four is a request for an award of attorney's fees and costs should the plaintiffs prevail on counts one through three.

## LEGAL STANDARD: MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants seek dismissal of all claims against them pursuant to Rule 12(b)(6) for "failure to state a claim on which relief can be granted." To avoid dismissal, a claim "must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *In re Rigel Pharms., Inc. Securities Lit.*, 697 F.3d 869, 875 (9th Cir.2012) (*"Rigel"*) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint's well-pled factual allegations are assumed to be true, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir.2009), and construed in the light most favorable to plaintiff, *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir.), *cert. denied*, — U.S. —, 133 S.Ct. 758, 184 L.Ed.2d 499 (2012).

Ultimately, the well-pled factual allegations "must be enough to raise a right to relief above the speculative level...." *Rigel*, 697 F.3d at 875 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A claim has facial plausibility for 12(b)(6) only " 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir.2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). " 'Conclusory allegations of law and unwarranted inferences,' of course, 'are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Caviness*, 590

F.3d at 812 (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 677–78, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Where a complaint pleads facts "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 677, 129 S.Ct. at 1949.

█ In assessing whether a plaintiff has carried its Rule 12(b)(6) burden, the Court is generally limited to the face of the complaint and its attached exhibits, materials incorporated therein by reference, and matters suitable for judicial notice, *see Zucco*, 552 F.3d at 989) (judicially noticeable matters); *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir.2012) (attached exhibits), *pet. cert. filed on other grounds*, — U.S.L.W. —, 2012 WL —— (U.S. Dec. 3, 2012) (No. 12–688). Under Federal Rule of Evidence 201(b), this Court may take notice of "matters of public record," *Lee v. City of L.A.*, 250 F.3d 668, 669 (9th Cir.2001) (citing *Mack v. So. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)), including but not limited to publicly filed records of federal and state courts, *see Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir.2002). In addition, the matter to be noticed must be "not subject to reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). "Ready determination" means that the document must be readily accessible to the public. *See Reynolds v. Hedgpeth*, 472 Fed.Appx. 595, 598 (9th Cir.

2012) (citing 21B Wright & Miller, FED. PRAC. AND PROC. § 5106.1 (2d ed. 2011)).

■ Finally, if a claim cannot be cured by amendment, it should be dismissed without affording leave to further amend. "Although leave to amend should be given freely," *see* Fed.R.Civ.P. 15(a), "a district court may dismiss without leave where the plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Shechet v. Kim,* 481 Fed.Appx. 366, 366 (9th Cir. 2012)[3] (citing *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1041 (9th Cir.2011)); *see also Harris v. County of Orange,* 682 F.3d 1126, 1135 (9th Cir. 2012) ("Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency.") (citing *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003)).

## LEGAL STANDARD: REVIEW OF ERISA PLAN ADMINISTRATOR'S DECISION

■ "A Court reviews a denial of ERISA benefits *de novo* unless 'the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Flynn v. Sun Life Ass. of Canada,* 809 F.Supp.2d 1175, 1183 (C.D.Cal.2011) (Valerie Baker Fairbank, J.) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *see also Standard Ins. Co. v. Morrison,* 584 F.3d 837, 841 (9th Cir.2009) ("'Ensuring that reviewing courts respect the discretionary authority conferred on ERISA fiduciaries encour-

ages employers to provide medical and retirement benefits to their employees through ERISA-governed plans—something they are not required to do.'") (quoting *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 2353, 171 L.Ed.2d 299 (2008) (Roberts, C.J., concurring in judgment & concurring in part)). When an administrator's benefits decision is subject to *de novo* review, a Court must interpret the plan documents without deferring to any party's interpretation of the plan. *See Firestone,* 489 U.S. at 112–13, 109 S.Ct. 948.

■ By contrast, where the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court reviews benefit decisions under the deferential "arbitrary and capricious" standard, which is the same as an abuse-of-discretion standard. *See Sluimer v. Verity, Inc.,* 606 F.3d 584, 590 (9th Cir.2010). "'A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith.'" *Sluimer,* 606 F.3d at 590 (quoting *McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1113 (9th Cir.2000)). The question is not whose interpretation of the plan documents is most persuasive, but only whether the administrator's interpretation was unreasonable. *See Sluimer,* 606 F.3d at 590 (citation omitted).

■ Where the administrator labored under a conflict of interest, the abuse-of-discretion standard still obtains, but it is

---

**3.** Ninth Circuit Rule 39–3(b) provides, "Unpublished dispositions and orders of this court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1." In turn, Federal Rule of Appellate Procedure 32.1(a) provides, "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been (I) designated as 'unpublished,' 'not for publication,' 'not precedential,' 'not precedent,' or the like, that (ii) issued on or after January 1, 2007."

applied differently. As the Supreme Court has explained, where the entity that administers the plan,

> such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket ... this dual role creates a conflict of interest; ... a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and ... the significance of the factor will depend upon the circumstances of the particular case.

*MetLife v. Glenn,* 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). The Supreme Court further refined the standard of review in ... *Conkright v. Frommert,* 559 U.S. 506, 130 S.Ct. 1640, 1644, 176 L.Ed.2d 469 (2010), "emphasiz[ing] that under Glenn, 'a deferential standard of review remains appropriate even in the face of a conflict.'" *Salomaa v. Honda LTD Plan,* 642 F.3d 666, 674 (9th Cir. 2011) (quoting *Conkright,* 130 S.Ct. at 1646). *See, e.g., Day v. AT & T Dis. Income Plan,* 698 F.3d 1091, 1095–96 (9th Cir.2012) (administrator did not have inherent or structural conflict of interest).

 The SPD here states in pertinent part as follows:

> The nature and extent of benefits provided by the Plan and the rules governing eligibility are determined solely and exclusively by the Directors of the Plan. The directors shall also have full discretion and authority to interpret the Plan of Benefits and to decide any factual question related to eligibility for and the extent of benefits provided by the Plan.
> * * *

Doc 9–2 at 5. Nonetheless, in this case the Court need not decide whether the *de novo* standard of review or the deferential standard of review applies. This is because the Court is called upon not to interpret a provision of the plan but to decide pure matters of law, and under no circumstance does a court defer to a plan administrator's position on a matter of law. Indeed, the SPD itself is careful to state that the plan administrator has discretion to interpret the plan and to decide "any *factual* question...." *See also, e.g., Coffin v. Bowater, Inc.,* 385 F.Supp.2d 38, 49 (D.Maine 2005) ("[T]he plan administrator is due no deference in determining whether the 1999 sale of GNP resulted in a plan termination as a matter of law."), *recon. denied,* 2005 WL 3021979 (D.Maine Nov. 10, 2005), *aff'd,* 501 F.3d 80 (1st Cir.2007); *cf. Ryan v. Asbestos Workers Union Local 42 Pension Fund,* 27 Fed.Appx. 100 (3d Cir.2002) (even under the deferential "arbitrary and capricious" standard of review, a court "need not defer to the Trustees' decisions which are '... erroneous as a matter of law'") (citing, *inter alia, Courson v. Bert Bell NFL Player Retirement Plan,* 214 F.3d 136 (3d Cir.2000)). Namely, the court does not defer to the plan's reading of the law on key legal issues presented by this case: (1) whether the Plan's presentation and explanation of the reimbursement provision satisfy 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.102 and 2520.103 and if not, whether the Court has the authority to estop the Plan from applying that provision, and (2) whether the Court may apply federal common-law equitable doctrines to limit the Plan's application of that provision. *See Sluimer,* 606 F.3d at 590 (holding that plan administrator's error of law necessarily constitutes an abuse of discretion) (citing *Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 960 (9th Cir.2001)).

## DISCUSSION

*ERISA's Purpose, Structure, and Private Enforcement Mechanisms.*

ERISA was enacted in 1974 to govern two kinds of employee benefit plans: wel-

fare benefit plans and pension benefit plans. *See Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1330 (9th Cir. 1996) (citing *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). The Supreme Court has observed that ERISA "is ... a 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citing *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). "Congress enacted ERISA to 'protect the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and 'to provide for appropriate remedies, sanctions, and ready access to the Federal courts.' " *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (quoting 29 U.S.C. § 1001(b)). The Ninth Circuit directs courts to "remain mindful that 'ERISA is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans.' " *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir.2006) (quoting *Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1449 (9th Cir.1989)). On the other hand, ERISA does not mandate what kind of benefits employers must provide if they choose to have an employee benefit plan. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

■ ERISA § 502, codified as Civil Enforcement at 29 U.S.C. § 1132, authorizes various people and entities to bring a civil action. Section 502(a) provides that a civil action may be brought:

(1) by a participant or beneficiary

 (A) for the relief provided in subsection (c) of this section, or

 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.] [4]

29 U.S.C. § 1132(a)(1)–(3). The remaining provisions of section 1132(a) have no apparent relevance to this case, as those provisions either authorize civil actions by the Secretary, a State, or an employer, or

---

4. In our case, defendant Plan notes that it has not brought a civil action (or asserted any counterclaim) in its role as ERISA plan fiduciary under 1132(a)(3) or any other provision of ERISA. *Cf., e.g., Mayhew v. Hartford Life & Acc. Ins. Co.*, 822 F.Supp.2d 1028 (N.D.Cal. 2011). One becomes an ERISA fiduciary by (i) exercising discretionary authority or control over the management of a plan or disposition of its assets, (ii) rendering investment advice for a fee or other compensation, or (iii) exercising discretionary authority over the administration of a plan. 29 U.S.C. § 1002(21)(A). This definition of fiduciary "is therefore functional," *Advanced Salon Visions, Inc. v. Lincoln Ben. Life Co.*, 2010 WL 3341803, *4 (S.D.Cal. Aug. 25, 2010) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)), and should be broadly construed, *see TH & G Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994).

pertain to specialized situations that neither side alleges is present in our case.[5]

Here, there is apparently no dispute that the plaintiffs are "plan participants" as defined by 29 U.S.C. § 1002(7). *Contrast Harris v. Amgen, Inc.*, 573 F.3d 728, 732–33 (9th Cir.2009); *Curry v. CTB McGraw–Hill, LLC*, 296 Fed.Appx. 563 (9th Cir.2008) (holding plaintiffs were not plan participants). Nor is there any dispute that the defendant Plan here is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1) (any plan or fund or program which an employer establishes or maintains for the purpose of providing medical, surgical, or hospital care or benefits to its participants or their beneficiaries). *Contrast Daniels–Hall v. NEA*, 629 F.3d 992, 997–98 (9th Cir.2010) (union had not established ERISA employee pension benefit plan by endorsing and marketing annuities); *Gonzales v. Unum Life Ins. Co.*, 2009 WL 3226519 (S.D.Cal. Oct. 2, 2009) (voluntary workplace disability plan did not qualify as ERISA employee benefit plan because it fell within "safe harbor" provision, 29 U.S.C. § 1104(c) and 29 C.F.R. § 2550.404c–1).

*Plaintiffs Fail to State a Claim that Lack of Clarity Renders the Reimbursement Provision Unenforceable.*

 The Plan is demanding that Lenai turn over the $100,000 settlement as reimbursement for expenses which the plan has thus far covered. The Plan seeks the $100,000 pursuant to a reimbursement provision entitled "Claims Involving Third Party Liability" on pages 49–50 of the Plan's 195–page SPD. *See* Comp ¶ 8. Because Lenai has not turned over the $100,000, the Plan is using "self-help" by denying otherwise-covered medical claims by Lenai or the other plaintiffs until it has denied $100,000 worth of such claims. The reimbursement provision is not reflected in a separate entry in the SPD's main index entry, but rather appears in a sub-index on page 27. Moreover, plaintiff complains, the provision appears in the Coordination of Benefits section of the SPD sub-index even though it is not a Coordination of Benefits provision. Conversely, plaintiffs allege, the reimbursement provision does not appear "does not appear in close conjunction with" the summary of benefits for Hospital and Health Plan Services (SPD pp. 35–39) or in close conjunction with the Health Plan Options Summary (SPD pp. 29–33). *See* Comp ¶ 8. Finally, plaintiffs complain that the reimbursement provision thwarts the reasonable expectations that a beneficiary has upon reading another plan provision that deals with out-of-pocket expenses. They reason as follows,

> [P]lan members are led to believe on p. 44 of the SPD that their "Yearly Stop Loss / Out of Pocket Maximum" is $800 for contracting providers and $1,100 for non-contracting providers. Yet nowhere in that provision is it disclosed that the reimbursement provision is an exception to that [out-of-pocket maximum] provision. In the instant case, defendant plan is seeking recovery of more than 100 times the out[-]of[-]pocket maximum. This is misleading in the extreme

---

5. *See* 29 U.S.C. § 1132(a)(4) (Secretary, participant, or beneficiary may bring an action for appropriate relief in the case of a violation of § 1025(c) of this title [entitled "individual statements furnished by administrator to participants ..."]. Subsections (5) through (7) authorize certain suits only by the Secretary or by a State. Subsection (8) authorizes the Secretary, employer, or other person to enjoin any act which violates § 1021(f) or to obtain appropriate equitable relief to redress such violation or enforce § 1021(f). Subsection (9) addresses insurance contracts and annuities. Subsection (10) addresses certain multi-employer plans.

and does not comport with the above federal statute and regulations. P's Opp at 13.

■ Generally, " 'ERISA seeks to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan.' " *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1070 (9th Cir.2005) (quoting *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984)) (holding that although "there is no express statutory requirement to notify participants in a timely fashion of plan cancellation, such a requirement is implicit in the structure and purpose of ERISA, and is more vital than the ordinary technical reporting and disclosure requirements"). "[T]he evils against which ERISA was enacted to guard [are] insecurity, *lack of knowledge*, and inability to police plan administration...." *Peralta*, 419 F.3d at 1070 (quoting *Blau*, 748 F.2d at 1352) (emphasis added). In its declaration of policy goals, Congress stated that "[d]ue to the lack of employee information and adequate safeguards concerning their [employee welfare and benefit plans'] operation, it is desirable in the interests of employees and their beneficiaries ... that disclosure be made ... with respect to the establishment, operation, and administration of such plans." 29 U.S.C. § 1001(a).

The Ninth Circuit has held that in order to further ERISA's "central policy goal" of "protect[ing] plan participants" by requiring disclosure of financial and other information, "plans must provide plan participants with an SPD, which is the 'statutorily established means of informing participants of the terms of the plan and its benefits' and serves as 'the employee's primary source of information regarding employment benefits.' " *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir.2009) (quoting *Bergt v. Ret. Plan for Pilots Employed by Mar-*

*kAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002) and citing 29 U.S.C. § 1022(a)). To that end, ERISA provides that the SPD "shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

The text of 29 C.F.R. § 2520.102–2 and–3 implement and clarify section 1022(a)'s command of a clear and logically presented SPD. Section 2520.102–3(*l*) requires SPDs to clearly describe any circumstances which could result in reduction or recovery of benefits that a participant might otherwise expect to receive, and to summarize any plan provisions that might eliminate benefits. Both 29 U.S.C. § 1022 and the regulation at section 2520.102–2 require that SPDs make these explanations in a manner that can be understood by the average participant and is not misleading or incomplete. But the mere existence of these regulations alone does not compel the finding that plaintiffs have stated a claim on which relief could actually be granted (on their claim that the reimbursement provision is unenforceable because it was not clearly presented and explained and because it thwarts the average plan participant's reasonable expectations).

Plaintiffs assert that the Plan's reimbursement provision is a restriction of benefits which violates the regulation because it is not clear, and because it counterintuitively places the provision at in a section about Coordination of Benefits when it does not deal with coordination. Plaintiffs further contend that the Plan's reimbursement provision violates these regulations because it is not placed in close conjunction with the summary of benefits, nor

does the summary of benefits cross-reference the reimbursement provision (which according to plaintiffs "purports to completely eliminate the health care benefits under the Plan"). The Court notes that the Ninth Circuit sided with ERISA plan participants with regard to a similar argument that a preexisting-conditions exclusion was not written and presented in a manner that informed and met the reasonable expectations of the average plan participant. The Ninth Circuit recently explained as follows:

> Plaintiff is correct in asserting that we have incorporated the reasonable expectations doctrine into ERISA federal common law when we have interpreted insured plans. In *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 387 (9th Cir.1994), we "adopt[ed] the doctrine of reasonable expectations as a principle of the uniform federal common law informing interpretation of ERISA-governed insurance contracts." At issue in *Saltarelli* was a pre-existing conditions ·exclusion that appeared in the SPD. *Id.* at 385. We noted that the plan administrator "chose to bury one of the plan's .most significant provisions among definitions, rather than forthrightly stating the pre-existing conditions exclusion in the operative clauses of the plan description." *Id.* We therefore held that the exclusion for pre-existing conditions "was not clear, plain, and conspicuous enough to negate layman Saltarelli's objectively reasonable expectations of coverage." *Id.* at 387.

*Scharff*, 581 F.3d at 905. But the Court's review of Saltarelli reveals a colorable argument that Saltarelli is factually distinguishable from our case, because the preexisting conditions exclusion there was presented and explained far less clearly than the reimbursement provision at issue here.

The ·reimbursement provision here was not unduly difficult to find, nor was it unreasonably difficult for the ordinary beneficiary to comprehend. The Court concurs with the Plan's characterization of the clarity and import of the reimbursement and related provisions:

> The terms of the MPI Plan provide for a simple contractual bargain which is unambiguously set forth in the MPI Plan. The Plan does not provide benefits where an injury or illness was in anyway caused by a third party who may be legally liable unless the participant contractually agrees in writing to do the 7 things listed in the section, including *agree to reimburse the Plan for benefits paid from the third party Recovery up to the amount of benefits paid by the Plan. [citing Ex. 1 at 77]*
>
> *The third party liability provisions ... further detail the obligations of the participants to reimburse the plan and what remedies are available to the Plan in the event the participant [Lenai Mull] breaches this contract by refusing to reimburse the Plan [the $100, 000 settlement paid by the other automobile driver's insurance carrier]. [citing Ex. 1 at 77–78] The MPI Plan overpayment procedures outlined at page 44 of the MPI Plan provide for recoupment from future medical benefits in the event participants breach their obligation to reimburse their obligation to reimburse the Plan from their third party Recovery.*

MTD at 8–9 (citing Ex. 1 at 77) (emphasis added).

In sum, "the SPD's important role in disclosure goes both ways: just as employees may rely on the terms of the plan as described in the SPD, so may a clear description in the SPD put them on notice of that plan's terms, including its clear repudiation of a claim for benefits." *Bilello v. JPMorgan Chase Ret. Plan*, 607

F.Supp.2d 586, 593–94 (S.D.N.Y.2009) (citing *Hirt v. Equitable Ret. Plan for Employees,* 450 F.Supp.2d 331, 333 (S.D.N.Y. 2006), *aff'd,* 285 Fed.Appx. 802, 804 (2d Cir.2008)). The allegations in the complaint do not make it plausible that they could recover on their claim that the reimbursement provision was so unclearly presented or explained as to be unenforceable as a matter of law. Even considering the allegations and contentions in plaintiffs' briefs, there is nothing to suggest they will be able to state such a claim in an amended complaint. When a court concludes that amendment would be futile to save a claim, the court may properly deny leave to amend as to that claim. *See Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185, 1189 (9th Cir.1998) (citing *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987)).

The Plan further contends that the plaintiffs have not made sufficient allegations to state a claim for money damages and/or invalidation of the reimbursement provision based on the Plan's alleged failure to clearly explain and present that provision. The Plan asserts that "[i]f a plaintiff is seeking to invalidate a plan or be awarded money damages based upon disclosure violations, Plaintiffs must show active concealment or some significant reliance upon or possible prejudice flowing from a faulty summary plan description." MTD at 17 (citations omitted). As noted above, the Court has determined that plaintiffs have failed to state a claim that the reimbursement provision violated the clarity requirements of the statute and regulations. That determination obviates the need to consider whether plaintiffs could meet any additional requirement that they show reliance on an impermissibly unclear provision and harm flowing from that reliance.

*For Purposes of Rule 12(b)(6), Plaintiffs Have Stated a Claim that the Plan's Application of the Reimbursement Provision Should be Subject to Equitable Principles.*

Next, the Plan seeks to dismiss the plaintiffs' claim for equitable invalidation, limitation, or amelioration of the reimbursement provision. The Plan rests heavily on the notion that "ERISA is constructed upon th[e] basic tenet of the primacy of the written terms of the Plan" and "ERISA provides no cause of action for benefits by participants who believe the terms of the written Plan are simply unfair." *See* Defendants' Brief filed Oct. 11, 2012 in Support of Motion to Dismiss ("MTD") at 8; *see also Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (stating that ERISA is "built around reliance on the face of written plan documents").

In this vein, the Plan emphasizes that ERISA section 502(a)(3), i.e., 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary *inter alia* to bring a civil action to (A) enjoin any act which violates the statute or "the terms of the plan" and (B) to obtain any other appropriate equitable relief to redress such violations or enforce any provisions of the statute or *the terms of the plan.* "Nothing in ERISA," asserts the Plan, "evidences an intent to authorize the court to override written plan documents." MTD at 8. Discussing Count Two—wherein plaintiffs seek to enjoin the Plan from continuing to deny medical claims until it has recouped the $100,000 third-party settlement that Lenai Mill received but has not turned over to the Plan—the Plan states, "[a]lthough Plaintiffs seek to avail themselves of the civil enforcement scheme it is clearly not to enforce the terms of the plan but to have the court rewrite the plan." MTD at 9; *see also* MTD at 18 ("Plaintiffs are not requesting 'appropriate equitable relief' to

*enforce* the terms of the plan, but a declaration that the plan terms are unenforceable, as written, or that the Plan's contractual rights, including self help ... are limited by equitable principals [sic] regardless of whether the Plan has sought 'appropriate equitable relief' under section 502(a)(3) of ERISA."); MTD at 24 ("Plaintiffs are not seeking plan benefits, rather plaintiffs are seeking benefits in violation of the terms of the Plan.").

But these arguments by the Plan are not conclusive at the 12(b)(6) stage; they beg the question, which appears at least arguable, whether Ninth Circuit law permits a plan participant/beneficiary to assert equitable defenses to eliminate, restrict, or offset the unjustly harsh effects of a plan's application of a plan provision. Defendants assert that the Court may not consider equitable defenses and principles in deciding whether, how, and to what extent a plan administrator may implement a plan provision, until and unless the Plan affirmatively asks for judicial relief. Yet the defendants thus far have not shown that Ninth Circuit precedent compels that conclusion. On the contrary, the defendants cite only a Seventh Circuit decision for their position that a federal court may not consider the equities of allowing a plan administrator to enforce a plan provision without limitation "where a plan has not filed a civil action nor sought judicial relief to recover" overpayments. *See* MTD at 21 (citing *Northcutt v. GM Hourly–Rate Employees Pension Plan,* 467 F.3d 1031 (7th Cir.2006)). Consequently, defendants have not shown that the equitable-defense claim is not based on a cognizable legal theory under federal common law as it exists in this circuit.

In sum, these arguments by the Plan go to the ultimate success or failure of the equitable-defense claim, not the adequacy of those claims for purposes of the *Twombly*/Rule 12(b)(6)/Rule 8 pleading standard. It is simply not clear as a matter of law, as the plan would have it, that "nothing in ... any common law developed by the Courts under ERISA ... authorizes the intrusion into the contractual relationship between the Plan and Plaintiffs [which is] demanded by the Plaintiffs." MTD at 9. The Court finds that the Mulls' allegations and contentions raise their right to relief on their equitable-defenses claim above the speculative level. Accordingly, the plaintiffs have satisfied the 12(b)(6) pleading standard with regard to their claim that the reimbursement provision cannot be enforced as written because it violates Ninth Circuit ERISA precedent[6] by purporting to waive any equitable defenses that a participant might have against a plan's claims. Plaintiffs have provided a reasonably clear and plain statement of their claim that such a waiver of participants' equitable defenses is unenforceable under *CGI Techs. & Solutions Inc. v. Rose,* 683 F.3d 1113 (9th Cir.2012) ("*CGI* "), *pet. cert. filed,* 81 U.S.L.W. 3114 (U.S. Aug. 24, 2012) (No. 12–240), and they have supplied sufficient allegations and contentions to show that this claim is legally cognizable and facially plausible. *See generally OSU Student Alliance v. Ray,* 699 F.3d 1053, 1060–61 (9th Cir.2012) ("To avoid dismissal under Rule 12(b)(6), a plaintiff must 'allege sufficient factual matter to state a claim to relief that is plausible on its face.' ") (quoting *Pinnacle Armor, Inc. v. US,* 648 F.3d 708, 721 (9th Cir.2011) (quoting *Iqbal,* 556 U.S. at 677–78, 129 S.Ct. at 1949)); *see*

---

**6.** Congress "expected federal courts to develop 'a federal common law of rights and obligations under ERISA-regulated plans.' " *Native Village of Kivalina v. ExxonMobil Corp.,* 696 F.3d 849, 855 (9th Cir.2012) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56,

107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). In fashioning that common law, federal courts "are guided by principles of trust law." *Standard Ins. Co. v. Morrison,* 584 F.3d 837, 841 (9th Cir.2009) (quoting *Firestone,* 489 U.S. at 111, 109 S.Ct. 948).

*also Gray v. IBEW Local 332 Pension Trust*, 495 Fed.Appx. 831, 832 (9th Cir. 2012) (Hug, Farris, Leavy) ("dismissal [under 12(b)(6) ] 'is ·proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim.'") (quoting *Hinds Investments, LP v. Angioli*, 654 F.3d 846, 849–50 (9th Cir.2011)). Specifically, the majority in CGI stated as follows:

> The Supreme Court … has not yet squarely addressed whether the statutory term *"appropriate* equitable relief" requires consideration of traditional equitable defenses. * * *
>
> \* \* \*
>
> \* \* \* "[I]t is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has ·been fully compensated for her injuries, that is, has been made whole. Under the common fund doctrine," a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." * * * Both the make-whole doctrine and the common-fund doctrine are rooted in concerns about unjust enrichment, a traditional principle of equitable relief. Traditionally at equity, it was within the province of the court to consider concerns of unjust enrichment when fashioning equitable remedies such as an equitable lien or a ·constructive trust, *even where contract terms attempted to limit their application.*

> \* \* \*

> *We agree with the Third Circuit that under § 502(a)(3), the district court, in granting "appropriate equitable relief," may consider traditional ·equitable defenses ·notwithstanding express terms disclaiming their application.* While a weighing of the equities, including the consideration of equitable defenses, might support [the determination] that full reimbursement per the Plan's terms is *"appropriate* equitable relief," … we disagree with ·the other circuits to the extent that they have held that § 502(a)(3) categorically excludes the application of traditional equitable defenses where the plan disclaims their application and requires reimbursement as set by. the plan. Congress in § 502(a)(3) empowered district courts to consider equitable principles in granting injunctive relief to a plan fiduciary against a plan beneficiary, and we will not read out of the statute the limitation that equitable relief be appropriate.

*CGI*, 683 F.3d at 1120, 1121, and 1123 (internal citations omitted) (italics added).[7]

---

7. Chief District Judge Beistline, sitting by designation, dissented as follows:

> In my view, the District Court granted *"appropriate* equitable relief" when it enforced the reimbursement provision of the Plan. The majority expresses no opinion as to whether CGI is entitled to reimbursement, but simply states that, in the· interest of eliminating unjust enrichment, the District Court should have considered the make-whole doctrine and the common fund doctrine in its determination of what constituted an *appropriate* equitable remedy under 29 U.S.C. § 1132(a)(3). Yet, in reaching its conclusion, the majority disregards the fact that both doctrines are disclaimed in the language of the Plan.
>
> While I can understand the merits of these doctrines, I do not believe that we can now inject principles into the Plan that the Plan purposefully and specifically excluded. I do not view the "appropriate equitable relief" provision as a mechanism for courts to rewrite ERISA plans. Such an interpretation invites litigation and unnecessarily complicates management of these plans. If Congress intended ERISA plans to include these equitable defense notwithstanding the · express terms of the plan disclaiming them, it certainly would have said so.

As one treatise has characterized the Ninth Circuit's decision in CGI, in a reading favorable to our plaintiffs,

> [I]n sum, the Ninth Circuit held that parties may not by contract deprive a district court of its power to act as a court in equity. However, contract terms should be considered by the court in assessing what is the proper scope of equitable relief. [N]otwithstanding the express terms of the plan disclaiming the application of the make-whole doctrine and the common fund doctrine, it is within the district court's broad equitable powers not to give those provisions a controlling weight in fashioning "appropriate equitable relief," the Ninth Circuit concluded.

*Pension & Benefits Week Newsletter* Vol. 18, No. 29 (RIA July 23, 2012). The *CGI* panel then remanded, instructing the district court to fashion "appropriate equitable relief" pursuant to § 502(a)(3):

> "Appropriate" relief would presumably include applying the equitable make-whole doctrine, or fashioning other fair relief by reducing the Plan's recovery to … the proportion of the beneficiary's actual damages that she recovered. Traditional equitable remedies would also appear to support requiring the Plan to contribute to the firm's fees under the common fund doctrine. [S]uch traditional equitable principles

*CGI*, 683 F.3d at 1126 (D.J. Beistline, dissenting) (paragraph break added). According to WestLaw, to date, no Ninth Circuit court has discussed Judge Beistline's *CGI* dissent.

**8.** In *CGI*, an amicus brief in support of the *certiorari* petition contends, *inter alia,* that *CGI*'s application of the make-whole doctrine as a defense to an "equitable lien by agreement" remedy conflicts with *Sereboff v. Mid Atlantic Med. Servs.*, 547 U.S. 356, 368, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). *See* Brief of Amicus Curiae Providence Health Plan, 2012 WL 4501743, filed in U.S. Supreme Court Sept. 26, 2012.

should apply to the facts presented in this case.

*CGI*, 683 F.3d at 1125–26; *see generally Krieger v. Nationwide Mut. Ins. Co.*, 2012 WL 1029526, *6 (D.Ariz. Mar. 27, 2012) ("The *Amara* Court explained that § 502(a)(3) may authorize three possible equitable remedies: estoppel, reformation, and surcharge.") (citing *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir.2012) (citing *Amara*, 131 S.Ct. at 1878–80)). As defendants note, unlike the lawsuit in *CGI*, this is not an action or counterclaim by a plan fiduciary against a beneficiary. *See* MTD at 2–3 ("[E]ven if the Plan were seeking equitable relief under section 502 of ERISA, which it is not.…"). But it is not clear that our Circuit would confine *CGI*'s reasoning (about the availability of equitable defenses notwithstanding ERISA plan terms that purport to limit or restrict such defenses) to actions brought under that provision alone. *CGI* used strong language in holding that district courts retain their equitable discretion to consider a beneficiary's equitable defenses even if a plan expressly purports to take away that discretion. In light of *CGI*, the Plan has not shown that plaintiffs lack a cognizable legal theory to support their claim that this Court retains its traditional equitable authority to consider equitable defenses and thereby refuse or limit enforcement of the reimbursement provision.[8]

About half a year ago, the Supreme Court granted *certiorari* in *US Airways, Inc. v. McCutchen*, 663 F.3d 671 (3d Cir.2011), *reh'g & reh'g en banc denied* (3d Cir. Jan. 4, 2012), *cert. granted,* —— U.S. ——, 133 S.Ct. 36, 183 L.Ed.2d 674 (2012) to determine the following similar question: "Whether … ERISA Section 502(a)(3) authorizes courts to use equitable principles to rewrite contractual language and refuse to order participants to reimburse their plan for benefits paid, even where the plan's terms give it an absolute right to full reimbursement." *See* U.S. Airways, Inc.'s Petition for Writ of Certiorari, 2012 WL 1451089 (Apr. 25, 2012) (No. 11–

With respect to plaintiffs' equitable-defenses claim, the Plan seems to be demanding more than Rule 12(b)(6) permits at this early stage. The motion to dismiss necessarily challenges only whether the complaint meets 12(b)(6)'s pleading standard, which is not a summary judgment standard. *See, e.g., Akhtar v. Mesa,* 698 F.3d 1202, 1214 (9th Cir.2012) (vacating 12(b)(6) dismissal) ("His allegations of deliberate indifference to his medical condition were sufficient to satisfy the pleading requirement. To the extent Appellees contest Akhtar's ability to *prove* harm, that is an issue for summary judgment or trial, not a Rule 12(b)(6) motion ...."); *accord Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010) (discussing *Iqbal'* s clarification of 12(b)(6), the court stated, " 'Plausibility' in this context does not imply that the district court should decide ... which version is more likely than not.").

The Court intimates no opinion, of course, as to who will ultimately prevail on plaintiffs' equitable-defenses claim. *See Trustees of SAG–Producers Pension & Health Plans v. NYCA, Inc.,* 572 F.3d 771, 775 (9th Cir.2009) ("we are satisfied that the trustees have made out a colorable federal claim that properly belongs in federal court. Whether the trustees will ultimately prevail, of course, remains to be seen. At this stage, however, the district court correctly analyzed this case under Rule 12(b)(6)...."); *In re WellPoint, Inc. Out–of–Network UCR Rates Lit.,* 865 F.Supp.2d 1002 (C.D.Cal.2011) (Gutierrez, J.) (denying motion to dismiss ERISA claim and noting that "12(b)(6) tests only the sufficiency of the pleaded claims, not necessarily the actual availability of relief") (citing *Ehrman v. Standard Ins. Co.,* 2007 WL 1288465, *4 (N.D.Cal. May 2, 2007)).

■■■ Finally, as to Count Four, a request for attorneys fees and costs pursuant to ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1), the Court agrees with the defendants (MTD at 24–25) that requests for damages or attorneys fees and costs are not properly asserted as independent causes of action. *Cf. Nelson v. Original Smith & Wesson Business Entities,* 2010 WL 7125186, *4 (D.Alaska May 18, 2010) ("The Court need not address Counts 5 and 6 for damages and punitive damages, as such claims are not independent causes of action."), *recon. denied,* 2010 WL 7125187 (D.Alaska June 14, 2010), *aff'd,* 449 Fed.Appx. 581 (9th Cir.2011). Moreover, it is premature to consider the appropriate form of relief until and unless the plaintiffs win a judgment on one of their substantive claims. *See Jarvis v. Allstate Ins. Co.,* 2012 WL 3647452, *2 (D.Mont. Aug. 23, 2012) (denying motion for partial summary judgment and noting that "attorneys fees issues ... are premature at this time"); *Hulihan v. Reg. Transp. Comm'n of So. Nevada,* 2012 WL 2060955, *2 (D.Nev. June 7, 2012) ("[T]his Court denied without prejudice Defendants' Motion for Attorney's Fees and Costs as premature because there has yet to be an entry of final judgment...."), *COA den.,* 2012 WL 3135681 (D.Nev. Aug. 1, 2012).

### ORDER

Defendants' motion to dismiss the complaint for failure to state a claim on which relief can be granted [**Doc. # 9**] is **GRANTED in part and DENIED without prejudice in part,** as follows:

— The plaintiffs' claim that the plan's third-party reimbursement provision is unenforceable due to lack of clarity is **DISMISSED** for failure to state a claim.

1285). It appears that the matter was argued before the Supreme Court on November 27, 2012. *See http://www.supremecourt.gov/* *search.aspx?Search=mccutchen&type=Site* retrieved Dec. 13, 2012.

— The motion to dismiss is **DENIED without prejudice** as to the remainder of the complaint.

**No later than February 28, 2013, plaintiffs MAY AMEND the complaint**[9] to:

(1) withdraw allegations and contentions relating to the dismissed claim;

(2) withdraw the ERISA § 502(a)(3) claims for declaratory and injunctive relief (Counts One and Two) or be prepared to demonstrate that such claims are appropriate, e.g. because an ERISA § 502(a)(1)(B) claim (to enforce rights under the plan, recover benefits due, or clarify rights to future benefits) does not afford an adequate remedy;

(3) move any request for fees and costs to the Prayer for Relief;

(4) rectify any other deficiency identified by this Order or identified by the motion to dismiss.

Plaintiffs do *not* have leave to add claims or amend in any other respect not specified herein. "The amended pleading shall not refer to the prior, superseded pleading." LCIVR 15–2.

No earlier than May 31, 2012[10], and no later than July 31, 2012, the parties **MAY FILE** dispositive motions.

IT IS SO ORDERED.

This is *not* a final and immediately appealable order.

---

**9.** Because a motion to dismiss is not a responsive pleading within the meaning of Fed. R.Civ.P. 15(a), plaintiffs have a right to amend once in any event. *See Shaver v. Operating Engineers Local 428 Pension Trust Fund,* 332 F.3d 1198, 1201 (9th Cir.2003).

---

**10.** The Supreme Court heard argument on November 27, 2012 in *McCutchen,* 663 F.3d 671, which also involves equitable principles in the ERISA context. The parties should await the Supreme Court's opinion in *McCutchen* before filing motions with regard to the remaining claim.